### MOLLIE A. LAUGHLIN ET AL. V. FIDELITY MUTUAL LIFE ASSOCIATION.

#### No. 311.

1. **Charge of Court—Directing Verdict.**—If there is merely a conflict in the evidence upon issues of fact which would justify a recovery, the settlement of such issues is peculiarly the province of the jury, and the court should not assume the excise of that function; but if the admitted or uncontroverted facts would not authorize a recovery, it is the legal right of the court, and a correct practice, to instruct the jury to return a verdict for the defendant.

2. **Insurance Policy—Forfeiture—Waiver.**—A policy of insurance provided, that a failure to pay when due any moneys required by it to be paid, should render it ipso facto null and void; and a note given for the first premium also expressly recited, that if it was not paid at maturity the policy should become ipso facto void, and the amount of the note should be an absolute liability as premium earned. *Held*, that a demand for the payment of the note after it became due could not reasonably be in-

terpreted as a waiver of the forfeiture. Cohen v. Insurance Company, 67 Texas, 325, distinguished.

3. Same—Parol Evidence to Contradict Receipt.—Parol evidence is admissible to show that the first annual premium recited in an insurance policy as paid, was not paid, but secured by a note which remained overdue; and where the pleadings of the adverse party also disclose and admit that fact, the admission of such evidence could not be material error.

4. Same—Waiver—Irrelevant Evidence.—See the opinion for correspondence between the officers of an insurance company in reference to a forfeited policy, after the death of the assured, held irrelevant as not tending to show either a waiver of the forfeiture or a reinstatement of the policy.

APPEAL from Ellis. Tried below before Hon. ANSON RAINEY.

The brief filed for appellants failed to reach the Reporter.

*M. B. Templeton,* for appellee.—1. The policy with its indorsements and the note with its recitals having been executed contemporaneously, will all be looked to in order to determine the contract of the parties. And it having been admitted in the pleadings of appellants that in fact the premium had not been paid, but was evidenced by the note, and that the note had not been paid, it was simply a question of law for the court, and not the jury, to construe the contract in the light of this admission; and the court did not err in holding, in the absence of any proof whatever of any waiver or reinstatement (there being none), that the policy became forfeited and ceased upon the nonpayment of the note at its maturity. Cohen v. Ins. Co., 67 Texas, 326; Thompson v. Ins. Co., 104 U. S., 252; Ins. Co. v. Pendleton, 112 U. S., 696; Klien v. Ins. Co., 104 U. S., 88; Ins. Co. v. Davis, 95 U. S., 425; Ins. Co. v. Statham, 93 U. S., 24; Ins. Co. v. Norton, 96 U. S., 234; 100 Mass., 500; 63 N. Y., 163; 43 N. Y., 283.

2. The proposition of appellants under their second error assigned complains of the action of the court in admitting testimony to show that in fact the premium had not been paid. Our objection to this is, that appellants admit in their supplemental petition that in fact a note was given for the premium; and such evidence is admissible. Baker v. Ins. Co., 43 N. Y., 287; Pitt v. Ins. Co., 100 Mass., 504; 112 U. S., 707.

3. If the policy became ipso facto void upon the nonpayment of the note at its maturity, as has been heretofore argued, then it was not necessary to declare a forfeiture. Baker v. Ins. Co., 43 N. Y., 283; Roehner v. Ins. Co., 63 N. Y., 163; How v. Ins. Co., 80 N. Y., 43; Pitt v. Ins. Co., 100 Mass., 500.

FINLEY, ASSOCIATE JUSTICE.—Appellants sued appellee to recover the sum of $2000 upon a life insurance policy which appellants allege was issued on April 28, 1891, by appellee, upon the life of Daniel P. Laughlin, who, at the time he obtained said policy, paid to appellee the first annual payment, which, under the terms of said policy, was

full satisfaction of all dues under said policy up to April 28, 1892. That said Laughlin died on December 24, 1891, and appellants demanded of appellee the payment of said sum of $2000, whereupon appellee denied all liability under said policy. The policy is attached to the petition and made a part thereof.

Appellee, in its answer, admitted the issuance of the policy sued upon and the receipt for first annual dues, as alleged by appellants; but to avoid the policy, alleged that D. P. Laughlin, upon application for said policy, executed his note to appellee for $43.18 for the first annual dues, due October 24, 1891, which note contained a clause to the effect, that "if said note is not paid at maturity, the policy for which it was given should become ipso facto void;" and that said note was not paid at maturity, hence the policy sued upon was void.

Appellants, by replication, admitted the execution of the note and the nonpayment of same at maturity, but say: 1. The note was accepted by appellee and its agent as a cash payment for the first annual dues, as shown by the recital of payment in both policy and receipt sued upon. 2. The said forfeiture clause in said note was rendered nugatory by other stipulations therein, inconsistent with the said forfeiture clause. 3. Appellee has, by its acts, waived its right to forfeit said policy. Appellants also offered to deduct the amount of the note and interest from the proceeds of the policy.

It is stated in the face of the policy, that it is issued "subject to all the requirements hereinafter stated and the conditions hereon indorsed, which are hereby referred to and made a material part of this contract." Then following, in the face of the policy, it is stated: "Provided, any moneys required to be paid under this policy, during the continuance of this contract, must be actually paid when due to said association, at its home office in Philadelphia, Pa., but the same will be accepted if paid when due, to an agent, in exchange for a receipt signed by the president and treasurer and countersigned by such agent, as evidence of payment to him; otherwise, this policy shall be ipso facto null and void, and all moneys paid thereon shall be forfeited to the said association."

On the back of said policy are indorsed the following, viz: "No agent of the association has any power or authority to make, alter, or discharge contracts, waive forfeiture, or grant credit; and no alterations of the terms of this contract shall be valid, and no forfeiture hereunder shall be waived, unless such alterations or waiver be in writing, and be signed by the president of the association."

Again: "If the policy lapse or become forfeited, it may be reinstated upon the approval of the medical director and president, provided the lapsed member be in good health and furnish evidence thereof; but such reinstatement or reinstatements shall be exclusively at the option of the association, and the terms of the contract shall not be varied or altered in any respect by any custom or course of dealing whatever."

"A payment or notice of dues sent to the member, he having defaulted in payment, shall not be a recognition or restoration of this policy, which shall be and remain null and void until reinstated as aforesaid."

The policy recites payment of the first year's premium and dues, and a receipt therefor, properly signed and absolute in terms, was given, but it is pleaded and admitted that not one cent was ever in fact paid; but contemporaneous with the issuance of the policy a note was given for the same, due six months after date, payable at the Citizens National Bank, Waxahachie, in which note it is recited, that "if this note is not paid at maturity, policy No. 26,595, for which it is given, shall be ipso facto null and void, and shall remain so until restored as provided in its terms. It is expressly agreed and understood, that in any event the maker of this note shall be liable for its face value, with interest from date hereof at 6 per cent interest."

The evidence showed, that the insurance company had been doing a note business for about eighteen months; it was a departure from the regular rules of the company, and a special privilege accorded to Texas agents. The State agent had a contract with the company to guarantee such notes to the extent of the actual cost of carrying the policy to the time of the maturity of the notes. If the notes were not paid at maturity, they became the property of the State agent, and the actual cost of carrying the policy up to that time was paid by such State agent. The actual cost of carrying this policy to the time of the maturity of the note, amounting to $6.11, was charged by the company to the State agent, Brown, and he was liable for it under his contract with the company; the note became his upon its nonpayment at maturity, and he paid the $6.11 to the company.

The local agent testified, that he demanded of the assured payment of the note after it fell due; that payment was refused, and he told the assured, between the 1st and 15th of November, 1891, that the failure to pay the note forfeited the policy; other witnesses testified to inconsistent statements made by him. The note fell due October 24, 1891. The assured took sick December 9, 1891, and died December 24, 1891. On December 16, 1891, the policy was marked cancelled on the books of the association.

*Opinion.*—The cause was submitted to a jury, and after all the evidence was introduced, the court instructed the jury to return a verdict for the defendant. A verdict was by the jury returned in accordance with the instructions from the court, and the appropriate judgment rendered. The action of the court in instructing the jury to return a verdict for the defendant is assigned as error; and it is contended, that the forfeiture of the policy was an issue of fact which should have been submitted to the jury for determination. Under this assignment the following propositions are presented and urged by appellants:

"1.  It is the province of a jury to decide upon the credibility of witnesses and the weight of conflicting testimony; and when there is evidence tending to support a cause of action, it is error to withdraw the case from the jury.

"2.  Whether appellee had exercised its option and declared a forfeiture within a reasonable time in this case, was a question of fact for the jury."

The correctness of the first proposition is conceded, but its application to this case is dependent upon other propositions.  If there was merely a conflict in the evidence upon issues of fact which would have justified a recovery, the settlement of such issues was peculiarly the province of the jury, and the court should not have assumed to itself the exercise of that function.  If, however, the admitted or uncontroverted facts would not legally authorize a recovery, it was the legal right of the court, and a correct practice, to instruct the jury to return a verdict for the defendant.

The second proposition assumes that the forfeiture of the policy was, under the contract of insurance, a matter of option to be exercised by the insurance company within a reasonable time, or not, as it might choose.  If this construction of the contract of insurance is sound, then the further idea embraced in the proposition, that it was a question of fact for the jury to determine whether such option had been exercised within a reasonable time, would also be well grounded.  Just here is a most important question to be determined before entering upon the consideration of other questions presented.  It is an admitted fact in the pleadings, that the policy and premium note were executed contemporaneously, and that they concern the same parties, and relate to the same subject matter.  Under elementary rules of construction, which may not be disregarded by courts, such policy and note constituted parts of the same contract, and must be so considered in determining the real contract entered into by the parties.  The policy clearly provides, that a failure to pay when due "any moneys required to be paid," shall render the policy ipso facto null and void; while the note executed by the assured for the premium shows the purpose for which it was given, and expressly recites, that if it is not paid at maturity the policy shall become ipso facto null and void, and the amount of the note shall be an absolute liability.  It is evident that the written express intention of the contract provides for an absolute forfeiture of the policy upon the contingency of a failure to pay the premium when due.  To construe the contract as providing an option of forfeiture to be exercised, or not, by the insurance company, upon the failure of the assured to pay the premium money when due, would overthrow the intention deliberately expressed, and create a contract into which the parties never entered.  It is therefore clear, that unless this provision in the contract was waived, or the policy was rehabilitated after forfeiture, the insurance company was not liable upon the policy, and no recovery could legally be had.  Cohen v.

Ins. Co., 67 Texas, 325; Thompson v. Ins. Co., 104 U. S., 252; Ins. Co. v. Pendleton, 112 U. S., 696; Klein v. Ins. Co., 104 U. S., 88; Ins. Co. v. Davis, 95 U. S., 425; Ins. Co. v. Statham, 93 U. S., 24; Ins. Co. v. Norton, 96 U. S., 234; 100 Mass., 500; 63 N. Y., 163; 39 Wis., 111; 80 N. Y., 43; 83 N. Y., 73; May on Ins., sec. 341.

In the Cohen case, it was held that a demand for payment of an overdue premium should be considered a waiver of forfeiture for non-payment of premium at maturity, when the contract did not provide that such premium should be considered as earned. When the contract provides that the full premium shall be considered as earned, the assured is absolutely liable for the amount of the premium, and a demand for its payment after it has become overdue could not reasonably be interpreted as a waiver of forfeiture, and no such effect should be given to it. In this case the contract clearly so provided, and the evidence, which, it is contended, tended to prove that the agent made demand for payment of the premium when it was overdue, did not tend to prove a waiver. There is no evidence in the case whatever tending to prove that the forfeiture was waived, or that the policy was reinstated after forfeiture.

Second error assigned: "The court erred in permitting parol testimony to contradict the recitals in the policy of the payment of the first annual dues; and in admitting testimony to contradict the receipt issued by defendant acknowledging payment of first annual dues."

This evidence was wholly unnecessary, and equally harmless. Appellants admitted in their pleadings that the premium was wholly unpaid, that the note was executed for such premium, and asked that it be deducted from the amount of the recovery. The evidence was admissible, however. Pitt v. Ins. Co., 100 Mass., 504; 112 U. S., 707.

Third and fourth assigned errors, presented together: "3. The court erred in refusing to let D. J. McGee (local agent of appellee) answer whether or not he admitted to R. M. White, just after the death of Laughlin, that the policy sued upon was valid, and that defendant company would have to pay same.

"4. The court erred in refusing to admit in evidence the correspondence between L. G. Fouse, president of defendant company, and A. J. Brown, State agent for defendant, tendered by plaintiff (as shown by bill of exceptions number 3), said correspondence being relevant as showing the concealment of material facts from plaintiffs, and the method of conducting defendant's business, and how defendant regarded the policy sued upon; also, to discredit said witness Fouse."

As to the third assignment, it is sufficient to say, the insurance company could be affected in no way by the admissions of the local agent as to the liability of the company, made after the death of the assured. The evidence was not admissible.

Under the fourth assignment, appellants make the following statement as to the purport of the correspondence sought to be introduced

in evidence: "A. J. Brown, State agent, stated, that the copies of correspondence attached to answers of L. G. Fouse, president, did not constitute all the correspondence between him and defendant company and its agent relative to the Laughlin policy. At request of plaintiffs, said Brown produced the omitted correspondence. Plaintiffs then offered to read in evidence the portion of each of said letters pertaining to the Laughlin policy; objection was made and sustained. Letter number 1, from President Fouse to A. J. Brown, admitted that said Fouse had refused to answer interrogatories fully, and that he had willfully withheld material correspondence relating to the Laughlin policy. Letter number 2, from Brown to Fouse, president, stated, that 'We have been too eager to do a large business. I have advanced largely to men not entitled to credit. Experience is a dear school,' etc. Letter number 3, from L. G. Fouse to A. J. Brown, contains the following in reference to the Laughlin policy: 'We received a letter this morning from R. M. White informing us of the death of D. P. Laughlin. I presume we will have trouble with it; and the only thing I could do was to tell him that the policy, on account of the nonpayment of the note which was due October 24th, was cancelled. I have no doubt but that we will have trouble with it; and in such cases an effort should be made to get the policy back in our hands, and before they consult an attorney.' Letter number 4, from Brown, State agent, to L. G. Fouse, president, states: 'You say in your letter that we had better send the note of D. P. Laughlin to home office, and at the same time say that it would be best for us to get the policy in our hands. I do not exactly understand how I could go to work to get the policy of a dead man while the note given by him was in the hands of the company. It occurs to me this would make bad matters worse.' Letter number 5, from Fouse to Brown, says: 'I did not make myself clearly understood in regard to D. P. Laughlin. If the policy can be taken up, a strong effort should be made to get it; then of course the note must be surrendered. If they decline, however, to surrender the policy, we should be in possession of all the papers relating to the case. I just this moment had a conversation with Mr. Campbell. He says when a note is past due, and the holder of a policy is not a risk that we should care to have on our books, that we, in the presence of witnesses, should return the note and demand a return of the policy. You will therefore, in all such cases, govern yourself accordingly; always make sure to have competent witnesses to prove the return of the note and the demand of the policy.' "

This correspondence all took place after the death of the assured. Concede the statement of its purport to be correct, it in no way tended to show that the forfeiture clause had been waived, nor that the policy had been reinstated after forfeiture. One of these facts had to be shown in order to entitle plaintiffs to recover, and as the correspondence did not tend to show either, it was immaterial and irrelevant.

The remaining errors assigned relate to the refusal of the court to give to the jury a number of special charges requested, presenting appellants' view of the case. We deem it unnecessary to consider these various assignments. The facts did not warrant a recovery in the case, and the court properly instructed the jury to return a verdict for the defendant.

The judgment is affirmed.

*Affirmed.*

Delivered October 3, 1894.

RAINEY, Associate Justice, did not sit in this case.

Writ of error refused.