.NATIONAL LIFE INSURANCE CO. v. MOLLIE A. MANNING.

Decided March 18, 1905.

**1.—Life Insurance—Delayed Payment of Premium—Waiver.**

Where a life policy provided that a failure to pay any renewal premium or note given therefor, or any part thereof, when due, should cancel the insurance and terminate the policy, and a note given by the insured for a renewal premium stipulated that if it was not paid at maturity the policy should cease and the whole amount of the note should be considered as earned and be collectible without restoration of the policy, the receipt by the insurer of a part payment on the note after default in its payment at maturity did not operate as a waiver of the forfeiture where the insured died before completing the payment.

**2.—Same—Interest—Forfeiture.**

A failure to pay the interest on the note as stipulated therein operated to work a forfeiture, even if the principal is to be regarded, under the facts stated, as having all been paid prior to the death of the insured.

**3.—Same—Restoration of Policy After Death.**

A clause in the policy providing that the insured should have the right to restore the policy at any time within one month after its forfeiture, without furnishing evidence of good health, upon payment of the premium with six per cent interest, did not give the effect of a restoration to a tender of the premium and interest made for the insured after his death and within a month from the forfeiture.

**4.—Same.**

Where the insured gave his note for a premium due and the note provided that if it should be collected after maturity and satisfactory evidence of the good health of the insured is furnished, the policy may be restored, this superseded the clause in the policy permitting such restoration without evidence of good health.

**5.—Same—Annual and Quarterly Payments.**

Where the policy gave the insured the option of paying premiums annually, semi-annually or quarterly, and he elected to pay annually and executed his note for an annual premium, but failed to pay it in full at maturity, the fact that the amount paid by him on the note before forfeiture would have sufficed, under the quarterly payment plan, to keep the policy alive until the date of his death, did not prevent the forfeiture from taking effect.

Appeal from the District Court of Shackelford. Tried below before Hon. J. H. Calhoun.

*Maurice E. Locke,* for appellant.—1. Before the death of the insured, the policy sued upon had ceased to be in force by reason of the nonpayment of a note given by him for the second annual premium thereon. Iowa Life Ins. Co. v. Lewis, 187 U. S., 335; Laughlin v. Fidelity Mut. Life Assn., 28 S. W. Rep., 411; National Life Ins. Co. v. Reppond, 81 S. W. Rep., ——; Pitt v. Berkshire Life Ins. Co., 100 Mass., 500; McIntyre v. Michigan State Ins. Co., 52 Mich., 188; Fowler v. Metropolitan Life Ins. Co., 116 N. Y., 389; Ressler v. Fidelity Mut. Life Ins. Co., 75 S. W. Rep., 735; Cohen v. Continental Fire Ins. Co., 67 Texas, 325; Union Cent. Life Ins. Co. v. Chowning, 28 S. W. Rep., 117; Economic Life Assn. v. Spinney, 116 Iowa, 385; Wall v. Home Ins. Co., 36 N. Y., 157; Williams v. Albany City Ins. Co., 19 Mich., 451; Joliffe v. Madison Mut. Ins. Co., 39 Wis., 111; Shultz v. Hawkeye Ins. Co., 42 Iowa, 239; 9 Cyc., 242; Mutual Life Ins. Co. v. Hill, 193 U. S., 551; Union Cent. Life Ins. Co. v. Wilkes, 92 Texas, 468; 1 Daniel, Neg. Inst., sec. 633; 7 Cyc., 871, 878; Want v. Blunt, 12 East, 183; Pritchard v. Mutual L. Assur. Soc., 3 Com. Bench, N. S., 622; Simpson v. Accident Death Ins. Co., 2 Com. Bench, N. S., 257; Tarleton v. Staniforth, 5 Term Rep., 695; Mutual Ben. Life Ins. Co. v. Ruse, 8 Ga., 534; Lantz v. Vermont Life Ins. Co., 139 Pa. St., 546; 2 May on Insurance, secs. 353-355, 357; Niblack on Benefit Societies, 515; Bliss on Life Insurance, sec. 195; Crawley on Life Insurance, 49; Paine v. Pacific Mut. Life Ins. Co., 51 Fed. Rep., 689; Gibson v. Pelkie, 37 Mich., 379; Couturier v. Hastie, 5 H.. of L. Cas., 673; Riegel v. Am. Life Ins. Co., 153 Pa. St., 134; Porter on Insurance, 8; Valery, Des Contrats par Correspondance, 198, 191; Levi, Della Assicurazione sulla Vita, 249.

2. Insofar as the remittance started on its way before Dr. Manning died may be regarded as his implied offer to pay up his premium

and revive his policy, it was revoked and annulled by his death for a reason independent of that mentioned in the last paragraph. He did not succeed in completing a contract of restoration before he died; and he could not make one thereafter, because a dead man can not contract. In both common law countries and civil law countries it is held that death revokes outstanding propositions. Travelers' Ins. Co. v. Jones, 73 S. W. Rep., 978; Paine v. Pacific Mut. Life Ins. Co., 2 C. C. A., 459, 51 Fed., 689; Pratt v. Trustees of Baptist Society, 93 Ill., 475, 34 Am. Rep., 187; Wallace v. Townsend, 43 Ohio St., 537, 3 N. E. 601; Phipps v. Jones, 20 Pa. St., 260; Helfenstein's Estate, 77 Pa. St., 328, 18 Am. Rep., 449; Foust v. Board of Publication, 8 Lea (Tenn.), 552; The Palo Alto, 2 Ware, 344, Fed. Cas. No. 10700; Browne v. McDonald, 129 Mass., 66; Twenty-third St. Baptist Church v. Cornwell, 117 N. Y., 601, 23 N. E., 177; Anson on Contracts, *28; Ruediger, Lebensversicherungsvertrag, 112, 205.

*S. Webb, J. A. King* and *Thomas L. Blanton,* for appellee.—1. Where a policy provides: that failure to pay the premium when due shall cancel the insurance and terminate the policy; but in a later clause it further provides: "In case any premium becoming due under this policy after the completion of one year shall not be paid on or before the date due, the insured hereunder shall have the right to restore this policy at any time within one month after such date, without furnishing evidence of good health, upon payment of the premium with six percent interest;" the insured, in such case, without regard to his state of health, ipso facto restores such policy, without any action whatever on the part of the company, simply by making the payment with interest within one month after such payment was due. Hartford Life Co. v. Unsell, 144 U. S., 449, 36 L. Ed., 496; Washington Life Ins. Co. v. Berwald, 72 S. W. Rep., 436; New York Life v. English, 67 S. W. Rep., 884; Insurance Co. v. Orlopp, 61 S. W. Rep., 336; Hamilton Gin & M. Co. v. Sinker, 74 Texas, 51; Insurance Co. v. Eggleston, 96 U. S., 577, 24 L., 841; Hallock v. Commercial Ins. Co., 26 N. Jer. Law, 268; 1 Beach Modern Law of Contracts, 66; Security T. & Life Co. v. Hallam, 73 S. W. Rep., 554.

2. Where an insurance policy contains inconsistent provisions, or are so framed as to be open to construction, such construction should be liberal to avoid forfeiture. McMaster v. New York Life Ins. Co., 183 U. S., 40, 46 L. Ed., 64; Pythias v. Withers, 177 U. S., 275, 44 L. Ed., 769; New York Life Ins. Co. v. English, 67 S. W. Rep., 884; Insurance Co. v. Orlopp, 61 S: W. Rep., 336; Hallock v. Commercial Ins. Co., 26 N. Jer. Law, 268.

3. Forfeitures are not favored in law, and courts are always prompt to seize any circumstance that would avoid a forfeiture. Hartford Life I. Co. v. Unsell, 144 U. S., 449, 36 L. Ed., 496; Joliffe v. Madison M. Life I. Co., 39 Wis., 119.

An insurance company recognizes the existence of a policy, and waives forfeiture for nonpayment of premium, by extending a premium note after maturity, and then only requesting a partial payment of the extended note at the new maturity. Insurance Co. v. Eggleston, 96 U. S.,

577, 24 L. Ed., 841; Insurance Co. v. Wolff, 95 U. S., 330, 24 L. Ed., 387; Phenix Ins. Co. v. Doster, 106 U. S., 35, 27 L. Ed., 65; Joliffe v. Madison M. L. I. Co., 39 Wis., 119; Insurance Co. v. Unsell, 144 U. S., 449, 450, 36 L. Ed., 496.

SPEER, ASSOCIATE JUSTICE.—This is an action by appellee against appellant to recover the value of an installment policy of insurance for $5,000, issued by the appellant company upon the life of her deceased husband, Dr. Edmund R. Manning, together with interest, costs and statutory penalty. The appellant defended upon the ground that the policy was not in force at the date of Dr. Manning's death, because he had made default in the payment of a note given by him for the second annual premium thereon. A trial before the district judge resulted in a judgment in favor of appellee for $5,226.40, of which judgment the insurance company seeks a revision by writ of error.

The policy of insurance, which was issued June 18, 1902, contained the following conditions which are pertinent to the questions to be determined by us:

"The National Life Insurance Company of the United States of America, Washington, D. C., in consideration of the statements, agreements and warranties in the application herefor (copy of which is hereto attached), which is hereby made a part of this contract; and of the payment of $104.95, being the premium hereon for the first year, hereby promises to pay the sum of $5,000 in ten equal installments of $500 each to Mollie A. Manning (wife of the insured) if living; if not living, to the insured's executors, administrators or assigns, at the principal branch office of the company in Chicago, Illinois, the first installment to be paid immediately upon receipt and acceptance of due proof of the fact and cause of death of Edmund R. Manning of Stamford, county of Jones, State of Texas (the insured under this policy), provided such death shall occur on or before twelve o'clock noon of the 18th day of June, A. D., 1903. The policy may be renewed and extended on like conditions, without medical re-examination, for the term of ten years from the 18th day of June, A. D., 1902, upon the payment of $104.95 on or before twelve o'clock noon of the 18th day of June in each year during said term.

"This policy, after having been in force for one full year, shall be incontestable, provided premiums are paid as required herein.

"The premiums under this policy are payable in advance, and may be paid annually, semi-annually or quarterly, at the option of the insured as follows: $104.95 annually, carrying the insurance for twelve months; or $54.55 semi-annually, carrying the insurance for six months; or $27.80 quarterly, carrying the insurance for three months.

"Any part of the year's premium remaining unpaid, together with any other indebtedness of the insured or beneficiary to the company, whether due or not due, together with the interest thereon, shall, at the option of the company, immediately become due, and shall be deducted from the amount or amounts first payable, in the event of death, or in any settlement hereunder.

"All premiums are payable at the principal branch office of the

company in Chicago, Illinois, unless otherwise agreed in writing, but may be paid to authorized agents or collectors, in exchange for receipts signed by the president or secretary, and countersigned by such agents or collectors. Failure to pay any note given on account of the first premium when due, or default in the payment of any renewal premium, or any part thereof, or any note given therefor when due, shall cancel the insurance and terminate this policy, and all payments previously made shall belong to and be retained by the company.

"This policy will be reinstated upon written application therefor within one year after nonpayment of any premium, subject to evidence of good health satisfactory to the company, and payment of all delinquent premiums, with interest at the rate of six percent per annum. In case any premium becoming due under this policy after the completion of one year shall not be paid on or before the date due, the insured hereunder shall have the right to restore this policy at any time within one month after such date, without furnishing evidence of good health, upon payment of the premium with six percent interest.

"All agreements made by the company are signed by the president or secretary. This power will not be delegated. No other person can alter or waive any of the conditions of this policy, or issue permits of any kind, or make any agreement binding upon the company.

"It is hereby agreed that in the event of the death of Edmund R. Manning, the insured under policy No. 43,593, issued by the National Life Insurance Company of the United States of America, which said policy is in full force upon the books of said company, Mollie A. Manning, the beneficiary named in said policy, shall have the privilege of commuting the installments due and payable as provided therein for a present cash value equal to 84.4 percent of the total amount of the installments payable, amounting to $4,220; it being expressly stipulated that, in case the said beneficiary shall avail herself of the above privilege, notice of her intention to do so shall be given to said company in writing within sixty days after the date of furnishing proofs of death of the said insured, otherwise this privilege to be void and of no effect."

Dr. Manning, being unable to pay the premium falling due June 18, 1903, executed and delivered to appellant the following note:

"$104.95.                    Stamford, Texas, June 15, 1903.

"On or before December 1, 1903, after date, for value received, I promise to pay to the National Life Insurance Company of the U. S. of A., at its principal branch office in Chicago, Illinois, one hundred, four and ninety-five one-hundredth dollars, with interest at six percent per annum from June 18, 1903, until paid.

"This note is given for the purpose of securing an extension to December 1, 1903, from June 18, 1903, under insurance contract No. 43593 of its issue, and shall be a lien on said policy.

"If this note is unpaid at maturity, the said policy shall cease and determine in accordance with its terms, and the whole amount of this note shall be considered earned, and shall be collectible by said company (together with a reasonable attorney's fee for cost of collection) without restoration of said policy. However, if this note is collected

after maturity, and satisfactory evidence of good health of the insured is furnished, said policy may be restored.

"No. 03196.   Due December 1, 1903.   P. O. address, Stamford, Texas.                                            (Signed) E. R. Manning."

Being yet unable to pay this note at its maturity, he sought and obtained an extension of the same until December 20, 1903, which extension was endorsed in ink upon the face of the note.   Upon January 7, 1904, the deceased paid upon this note the sum of $50, which was accepted and retained by the company.   On January 14, 1904, by the direction of the insured, M. E. Manning, his nephew, mailed to appellant's agent, at Waco, a draft for $54.95 in payment of balance due on Dr. Manning's note, in which letter he offered to remit any additional amount that might be due on such note by way of interest.   This remittance reached the agent at Waco on the morning of the 15th.   Dr. Manning had died between the time of its mailing at Stamford and its receipt at Waco.   On January 21, M. E. Manning sent to the Waco agent a draft for $3.75, in payment of interest due on Dr. Manning's note. The drafts for $54.95 and $3.75 were returned by the agent to Mr. Manning, the agent having learned of the death of the insured.   Upon these facts, which are undisputed, the appellant contends that judgment should have been rendered in its favor.

It can not be denied, and, indeed, seems not to be disputed, that, under the provisions of the policy, and the terms of the note already quoted, the policy ceased and determined upon the deceased's failure to pay such note at its maturity.   The failure ipso facto put an end to the insurance.   (Iowa Life Ins. Co. v. Lewis, 187 U. S., 335; Laughlin v. Fidelity Mutual Life Association, 28 S. W. Rep., 411; National Life Ins. Co. v. Reppond, 81 S. W. Rep., 1012.)   This default, in view of the extension granted upon the note, and of the days of grace to which it was entitled, may be taken to have occurred after December 23, 1903. Unless this forfeiture was in some way waived by the company, or the policy had been restored under the terms of the contract prior to Dr. Manning's death, the appellee was not entitled to recover.   The only act tending in any way to show a waiver upon the part of the company was the collection and retention of the $50 paid on the note on January 7, after default had been made.   Under the authorities, this can not be treated as a waiver, since the note itself provides that, if the same "is unpaid at maturity, the said policy shall cease and determine in accordance with its terms, and the whole amount of this note shall be considered earned, and shall be collectible by said company,  .  .  .  without restoration of said policy."   (Cohen v. Continental Fire Ins. Co., 67 Texas, 325; Union Central Life Ins. Co. v. Chowning, 28 S. W. Rep., 117; Laughlin v. Fidelity Mutual Life Association, 28 S. W. Rep., 411.)

Treating the payment of $54.95 as having been made to appellant prior to Dr. Manning's death, or, in other words, at the time the draft was deposited in the postoffice at Stamford, the sum of $104.95—the face of the note, representing the second annual premium—was paid by the insured within one month after that premium became due.   But there yet lacks an essential element of compliance to effect a restoration of the policy according to its terms, viz.: there remains to be paid inter-

est upon this sum at the rate of six percent per annum. It is undisputed that this interest, amounting to $3.71, was not paid by anyone till after Dr. Manning's death. The restoration of a lapsed policy is akin to the making of a new contract of insurance, and where, as here, the subject matter of the contract, to wit, the life of the applicant, had ceased to exist, there can be no lawful contract. It is too clear for argument that the language of the policy, that "the insured hereunder shall have the right to restore this policy at any time within one month after such date without furnishing evidence of good health, upon payment of the premium with six percent interest," contemplates that such payment shall be made by the "insured," which necessarily postulates that he is at the time alive. What we have said upon the subject of restoration presupposes that the restoration clause of the policy above quoted applies to the case before us. But it is by no means clear that such is the case; on the contrary, the restoration is by the note made to depend upon the provision contained therein relative to that subject. It is there stipulated: "If this note is collected after maturity, and satisfactory evidence of good health of the insured is furnished, said policy may be restored." Upon a default in the payment of the second annual premium, due June 18, 1903, Dr. Manning had the right, under the terms of the policy, to restore the same, without furnishing evidence of good health, upon payment of the premium with six percent interest, at any time within one month thereafter. Instead of exercising this right he chose to execute instead, the note for $104.95, heretofore set out, in payment of this annual premium, which contained the stipulation providing for a restoration of the policy in the event of a default in its payment by furnishing satisfactory evidence of good health of the insured, which, according to the undisputed evidence, was never done. The note itself is based upon a valuable consideration, and there is no reason why this latter contract between the parties, calling for satisfactory evidence of good health before a restoration should be effected, is not binding.

Finally, it is contended by appellee that, since the insured had the option to pay his second premium annually, semi-annually or quarterly, the payment by him of $104.95, made by January 15, 1904, ipso facto restored such policy, as the three quarterly payments then due, together with six percent interest, amounted to less than the payment made. Clearly, this position is not tenable, for the reason that the insured exercised his option under this paragraph of the policy to pay annually, and, in pursuance thereof, he executed his note to appellant for the amount of the annual premium, as already shown. It was expressly so pleaded by the appellee in her petition. While it is true that forfeitures are not favored in law, and while it is further true that, if a contract of insurance is capable of more than one construction, that construction most favorable to the insured will be adopted, yet, where the parties have made a contract, and clothed it in language that is clear and unambiguous, the courts have no power to construe the language otherwise than the parties themselves intended that it should be. We are not at liberty to change contracts, even though a forfeiture should result. Clearly, an insurance company has the right to stipulate for the prompt payment of premiums due, and to provide a forfeiture by way of penalty to en-

force such provision. There is nothing unlawful in such a contract. To avoid such forfeiture, those claiming under the policy must show a waiver and a substantial compliance with the terms of the contract. Neither has been shown in this case, and the judgment, therefore, should have been rendered for the appellant.

The judgment of the District Court is therefore reversed and judgment here rendered in favor of appellant.

*Reversed and rendered.*