NATIONAL LIFE & ACCIDENT INS. CO. v. REAMS. (No. 1194.)

(Court of Civil Appeals of Texas. Amarillo. June 13, 1917.)

1. INSURANCE ⟨⟩360(1) — REINSTATEMENT—INSURER'S LIABILITY AFTER DEFAULT.

An accident policy was issued to plaintiff June 28th, and provided that plaintiff was insured from 12 o'clock noon of the day of the contract until 12 o'clock of the 1st day of August, "and for such further periods stated in the renewal receipts as the payment of the premium specified in said schedule will main-

tain this policy and insurance in force." The policy provided that, if the payment of any renewal premium was made after the expiration of the policy or the last renewal receipt, "neither the assured nor beneficiary will be entitled to recover for any accident or injury happening between the date of such expiration and 12 o'clock noon, standard time, of the day following the date of such renewal payment, * * * nor shall the acceptance of an overdue premium or premiums constitute a waiver of the requirement that all renewal premiums be paid in advance as specified in this contract. The acceptance of any renewal premium shall be optional with the company." The premium due on December 1st was not tendered until December 7th, three days after plaintiff's injury, and was refused by the company. *Held,* in an action on the policy, that it was not in force at the time of the injury.

2. INSURANCE ⬤⟿388(4)—PAYMENT OF PREMIUMS—TIME—WAIVER.
There was no waiver by the company by reason of the fact that it had theretofore accepted premiums from the insured after the first of the month.

3. EVIDENCE ⬤⟿441(13)—PAROL EVIDENCE—AGREEMENTS NOT EMBODIED IN INSURANCE APPLICATION OR POLICY.
Plaintiff was permitted to testify at the trial that, at the time he was solicited by the company's agent, the agent told him that he would see that the policy would never lapse, and that there was a personal understanding that the policy would be kept in force "if I was out of the city three, four, or five days after the first day of the month." *Held,* that the testimony was improperly admitted, in view of Vernon's Sayles' Ann. Civ. St. 1914, art. 4953, providing that "every policy of insurance issued or delivered within this state on or after the first day of January, 1910, by any life insurance company doing business within this state, shall contain the entire contract between the parties, and the application therefor may be made a part thereof," and article 4968, providing that the agent shall be regarded as agent of the company, but shall not have power to waive, change, or alter any of the terms or conditions of the application or policy.

Appeal from Dallas County Court; T. A. Work, Judge.

Action by T. B. Reams against the National Life & Accident Insurance Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Read, Lowrance & Bates, of Dallas, for appellant. Allen & Allen, of Dallas, for appellee.

HALL, J. Appellee sued appellant company for the sum of $300 as indemnity, $50 as attorney's fees, and 12 per cent. statutory damages, alleged to be due him under the terms of a policy of accident insurance issued to him June 28, 1910. He alleged that he sustained injuries as the result of an accident on December 4, 1914, and was totally disabled for a period of 12 weeks from that date. The insurance company defended on the ground that the policy had lapsed on account of plaintiff's failure to pay the premium, which, under the terms of the policy, was due December 1, 1914. It was further alleged that the claim, if any, had been settled on December 19, 1914, and that

appellant had been released. By a supplemental petition, appellee set up a waiver on the part of appellant of its right to forfeit his policy for nonpayment of premium, and alleged that plaintiff received a check from the defendant in the sum of $100 on December 19, 1914, but that said check was in payment of a prior liability under said policy and had no connection whatever with the injuries involved in this suit. It appears that the policy was issued June 28, 1910, and its duration was governed by the following stipulation:

"Does hereby insure T. B. Reams, the person described in said schedule (hereinafter called the assured), subject to the provisions, conditions and limitations herein contained and indorsed hereon from 12 o'clock noon, standard time, of the day this contract is dated, until 12 o'clock noon, standard time, of the first day of August, 1910, and for such further periods stated in the renewal receipts as the payment of the premium specified in said schedule will maintain this policy and insurance in force, to wit:" (Here follows schedule of contingencies and the amount of indemnity payable upon the happening of such contingencies.)

Among other provisions, the policy contained the following:

"N. If the payment of any renewal premium shall be made after the expiration of this policy of the last renewal receipt, neither the assured nor beneficiary will be entitled to recover for any accidental injury happening between the date of such expiration and 12 o'clock noon, standard time, of the day following the date of such renewal payment, nor for any illness originating before the expiration of thirty days after the date of such renewal payment, nor shall the acceptance of an overdue premium or premiums constitute a waiver of the requirement that all renewal premiums be paid in advance as specified in this contract. The acceptance of any renewal premium shall be optional with the company."

"P. The company may cancel this policy at any time without prejudice to the rights of the assured to any claim then pending by a written notice of cancellation, served upon or mailed to the address of the assured, as it appears of record with the company, together with the company's check for the unearned portion, if any, of the premium paid, which check shall be sufficient tender."

"R. An agent has no authority to change this policy nor to waive any of its conditions. Notice to or from him shall not be held to effect a change or waiver of this policy, or any conditions thereof. No assignment or change of this policy or waiver of any of its conditions, shall be valid unless agreed to in writing by an executive officer of the company and indorsed hereon."

The schedule of warranties made by the assured attached to the policy and made a part thereof contains this statement, signed by the assured:

"(16) I understand and agree that this insurance is not effective until the policy has actually been issued by the company and delivered to me, and the policy fee or premium paid; that the company is not bound by any knowledge or statement made by or to any agent unless written hereon. I further agree to accept the policy subject to all its conditions and pay the monthly premium of $2.50 in advance without notice. I have carefully read all the forego-

ing, particularly my warranty of the truth of the facts herein stated."

The premium receipt book issued to plaintiff with the policy had printed on the front, outside cover this notice, "Read notice on second page of cover." And the notice referred to is as follows:

"The next payment of your premium is due and must be paid on or before the date named herein. Future premiums are due and must be paid on or before the first of each month thereafter without further notice, or your policy and insurance will be void. Each and every premium payment accepted or receipted for herein is accepted subject to all the provisions and conditions of the policy on which said premiums are paid, particularly paragraph 'N' of said policy, should receipt be given therefor, upon the express condition that neither the assured nor the beneficiary will be entitled to recovery for any accidental injury happening between the date on which the last renewal premium was due and 12 o'clock noon, standard time, of the day following the date of any such receipt herein given, nor for any illness originating before thirty days have elapsed after the date of any such receipt here given, and each and every such receipt herein entered is taken by the insured upon the foregoing conditions, by which acceptance all such claims of indemnity are waived."

By the second notice, printed on the second page of the premium receipt book, it is provided that, if any premium is not paid on or before due date, the policy lapses and the insurance is void until the policy is revived and reinstated as provided in paragraph N, and that no indemnity will be paid for any injury sustained or any illness contracted or beginning after the policy lapses and before it is reinstated; and, further, that no indemnity will be paid for any illness contracted, beginning within ten days after the policy is reinstated, if the assured is in arrears over five days.

The premium due, according to the terms of the policy, on December 1st, was not tendered until December 7th. The appellee was injured by a fall on December 4th, and sent a check to appellant for the purpose of paying the premium on the 7th, which was refused. It appears that he was in Dallas and went to appellant's office with a check on December 1, 1914, for the purpose of paying the premium; but his visit was made so late in the afternoon that he found the office closed, and no further effort was made to pay it until after the injury on December 4th. The facts relied on by appellant as a waiver of the forfeiture are pleaded by him as follows:

"And specially denying so much of paragraph 5 of said answer as sets up a forfeiture of said policy by reason of nonpayment of the monthly premium for the month of December, 1914, plaintiff says that his policy of insurance sued on herein contained, as stated by the defendant, pleaded by it the several clauses pleaded in said amended answer, but that as a matter of fact the defendant at the time of the issuance of its policy herein was notified by the plaintiff that he was a traveling salesman and would necessarily be at different places on the first of several months at which time his monthly premium of $2.50, according to the terms of

said policy, would fall due, and the said defendant then and there at time of delivery of said policy agreed that the plaintiff could remit said $2.50 monthly at any time during the current month at which it fell due, and plaintiff did from time to time so pay and remit to the defendant, and the defendant accepted his said payment without question up to and including the year 1914, and as shown by one receipt of February 6, 1914, issued by the cashier of defendant at Birmingham, Ala., acknowledging the receipt on February 6, 1914, of $2.50 due for a certain month, as shown by said receipt, which is hereby attached, marked 'Exhibit A,' and made a part of this petition, and also as shown by receipt dated October 5, 1914, showing the receipt of the payment of $2.50 on that date, signed T. C. Natsor, Sup., marked 'Exhibit B,' and made a part of this petition; and the defendant continued said course of dealing with this plaintiff up to and including the month of December, 1914, as will be shown by the last premium receipt book, delivered to plaintiff by defendant, which book is now in the possession of the defendant," etc.

It is further alleged that the appellant, by its continued course of dealing, in the acceptance of premiums, after the first of each month, is estopped from claiming or asserting a forfeiture of said policy for such nonpayment of premium.

In support of this plea it was shown that from August 1, 1910, up to and including December 3, 1912, only four of the monthly premiums were paid on the 1st of the month, and that the payments for October, November, and December were made after the 1st of the month. Plaintiff also introduced in evidence two letters from the home office at Birmingham, Ala., showing that his payments for February and October, 1914, were received on the 6th and 5th of said months, respectively. The appellee testified that at the time he was solicited by the appellant's agent, Mr. Dye, to apply for a policy, he had a policy with the Continental Casualty Company of Chicago, and that Dye told him, if he would cancel the policy with the Casualty and take it up with the National Life, "that he would see that as I was traveling considerably the policy would never lapse, and there was a personal understanding with him and with the office that the policy would be kept in force, with the assurance from me that I would not drop the policy without giving them 30 days' notice, and then on their part they would not drop it if I was out of the city 3, 4, or 5 days after the 1st of the month." Mr. Dye was in charge of the office at Birmingham at that time and took the application and delivered appellee the policy. The case was tried before the court without a jury, and from a judgment in favor of appellee this appeal is prosecuted.

[1, 2] Appellant assigns as error first that the court erred in holding that the policy was in force at the date plaintiff sustained his injuries. The first two propositions urged under this assignment are that the policy of insurance sued upon is not one which either party might require the other to continue in effect, but merely provided for insurance

from month to month contingent upon the payment by the insured and the acceptance by the insurer of the stipulated premium ·upon the 1st day of each month, and that it was renewable on the 1st day of each month by the mutual agreement of the parties, and that, plaintiff having failed to renew the contract by promptly paying the premium on December 1st, the policy lapsed by its own terms, and there was no waiver by the company by reason of the fact that it had theretofore accepted premiums from the insured after the 1st of the month, because the policy contained a provision that the premiums might be paid after their due dates, but protected the company in such case against liability, if any accident which might have happened to the insured between the date when the premium was due and noon of the day following the date of payment, and that plaintiff had failed to allege or prove that the company had ever accepted a premium from him and paid him any claim for indemnity between the date when the premium was due and noon of the day following the date of payment of such premium.

These propositions must be sustained. The case of Crosby v. Vermont Accident Ins. Co., 84 Vt. 510, 80 Atl. 817, is the leading authority upon insurance contracts of the character ·under consideration. There it is said:

"The plaintiff contends that by the company's ·acceptance of the past-due premiums in the months of February, March, April, and May, respectively, 1909, as above stated, he was led to ·believe that he might make payment of the premium at any time during the month for which it was due, and that, notwithstanding the premium ·for June overdue and unpaid at the time of the accident, the company is estopped from claiming that the policy was not then in force. Yet the ·record does not show such a course of conduct on ·the part of the company as gave the plaintiff .just and reasonable ground to infer that a forfeiture would not be exacted. The provisions ·of the contract respecting the payment of premiums at stated periods in advance, the effect of ·a default therein, the option of the insurer to receive past due premiums, and the effect of such acceptance, are material and reasonable between the insurer and the insured, and, in the absence of fraud or imposition, the plaintiff, by signing ·the application, accepting the policy, and bringing suit on it, must be held to have had notice of, to have understood, and to have agreed to, ·the terms, the limitations, and conditions cited in the application and in the policy. (Citing .authorities.) The plaintiff knew that, unless he paid the monthly premium in advance on the date specified, the policy would lapse .and he would be without protection by his own fault. He also knew the effect of the acceptance of past-due premiums by the company in the exer-·cise of its optional right to be, as expressly stipulated in the contract. There is no doubt that the course of conduct by the insurer may be ·such as to afford a basis for a reasonable excuse for defaulting a premium when due, but to have that effect something more than a course of action within the express terms of the policy— ·such only as was had in this instance—is required. It must be a course of conduct on which ·the insured had a right to rely as giving him a .just and reasonable ground to infer that the for-·feiture would not be asserted."

While the record· in the instant case·shows that appellant company received premiums a great many times after the 1st of the month, it was neither alleged nor proven that the company had ever accepted a premium from appellee after its due date and paid him a claim for indemnity under his policy on account of an accidental injury sustained by him between the date when the premium was due and noon of the day following the date of the payment of such premium. The mere receipt after its due date was nothing more than was contemplated by the terms of the policy, and could not, in the nature of things, be justly construed as a continuance of the contract, which by its terms expired on the 1st of the month if payment of the stipulated premium´had not, on or before said date, been made. Many of the authorities draw a distinction between policies of the character under consideration, which, by their terms, are from month to month, ,where the premium is payable in advance, and such payment extends the policy only for the specified term, and policies for indefinite or longer terms, providing for premium payments at stated intervals—holding, in cases of the former class, that if the required amount has not been paid on or before the day upon which the policy, by its stipulations expires, there is no contract; that the payment on such day is the making. of a new contract, and, since the failure by payment to renew the contract has abrogated·it, there is nothing which the company can waive by the receipt of premiums after the expiration date. On the other hand, a life insurance policy, issued for a term of years, may provide for its lapse by failure to pay the annual, semiannual or quarterly premiums, and usually provides that the company may declare a forfeiture, but that the assured by a tender of the amount within 30 days after due date, accompanied by a health certificate, may revise the contract. The policy in the instant case provided that the company might, at its option, receive or reject any monthly tender and offer to renew the contract, and, under its clear and unequivocal terms, such acceptance, after the 1st of each month, should not be construed as a waiver, nor did it have the effect of bringing within the contract any damages resulting from injuries received between the 1st of the month and noon of the day following the payment; and in this particular the case is clearly distinguishable from the case of Equitable Life Assurance Soc. v. Ellis, 105 Tex. 526, 147 S. W. 1152, 152 S. W. 625, and other authorities of like character in this state.

The rule announced in the Crosby Case is sustained in other jurisdictions and by the weight of authority where the rights of the parties, under accident policies providing for payment of premiums in advance, and termination of the contract upon failure to renew at stated intervals are involved. McMahon v. Travelers' Ins. Co., 77 Iowa, 229,

42 N. W. 179; Lantz v. Vermont Life Ins. Co., 139 Pa. 546, 21 Atl. 80, 10 L. R. A. 577, 23 Am. St. Rep. 202; Plumer v. Continental Casualty Co., 12 Ga. App. 594, 77 S. E. 917. And the rule seems to have been adopted in this state. American National Insurance Co. v. Roberts, 146 S. W. 326; National Life Insurance Co. v. Manning, 38 Tex. Civ. App. 498, 86 S. W. 618.

[3] Over the objections of appellant, appellee was permitted to testify to the agreement made with Dye hereinbefore set out, and the admission of this evidence is assigned as error. Article 4953, Vernon's Sayles' Civil Statutes, provides:

"Every policy of insurance issued or delivered within this state on or after the first day of January, 1910, by any life insurance company doing business within this state, shall contain the entire contract between the parties, and the application therefor may be made a part thereof."

The effect of this statute is to preclude parol evidence of any agreements or undertakings at variance with the terms of the contract as evidenced by the policy and application. Article 4968, Id., is:

"Any person who shall solicit an application for insurance upon the life of another, shall in any controversy between the assured and his beneficiary, and the company issuing any policy upon such application, be regarded as the agent of the company, and not the agent of the insured, but such agent shall not have the power to waive, change or alter any of the terms or conditions of the application or policy."

The policy in this case provides for the payment of $1,000 in the event of the death of the assured, and is issued by a life and accident insurance company. We are not called upon to hold that the two articles of the statute quoted above apply to insurance contracts issued by accident companies to indemnify against accidents only; but in our opinion they do apply to the policy in question, and the court should therefore have excluded the evidence of the conversation between appellee and Dye, set out above.

It appears that appellee had suffered a previous injury during the life of this policy, and on December 19th signed a receipt for full settlement of all claims on account of injury sustained or illness or disease contracted prior to the date of the voucher. Appellant set up this receipt as a defense to the action for damages claimed herein. Under appropriate pleadings, this position was attacked, and the evidence is sufficient to show that the $100 named in the receipt was not paid in settlement of the claim involved in this suit.

What has been said disposes of the remaining assignments. If upon another trial appellee fails to allege that by payment of indemnity for injuries sustained between the due date of the premium and the date of its actual payment, or in some other legal manner, appellant has waived the provision of its policy discussed above, the demurrer should be sustained.

The judgment is reversed, and the cause remanded.