[Civ. No. 6690. Second Appellate District, Division Two.—March 31, 1931.]

CHARLES W. CAMPBELL, Appellant, v. EAGLE IN
DEMNITY COMPANY (a Corporation) et al., Respondents.

John M. Bowen for Appellant.

J. Karl Lobdell and H. L. Watt for Respondents.

CRAIG, Acting P. J.—The appellant was insured by respondent company against loss by burglary of his residence.
Having suffered such a loss, he instituted an action upon
the policy of insurance. Judgment was rendered in favor
of the defendants, and the plaintiff appealed.

The case comes to us upon stipulated facts and the judgment-roll. By a policy of insurance issued in December,
1924, upon which a premium was paid for the period of
one year, it was recited that the same should cover loss or
damage occurring "within the policy term defined in state-

ment 13 of the schedule or within any extension thereof under renewal certificate issued by the company''. In the year 1925 a renewal certificate was issued upon payment to Price by appellant of the premium for a second year. In January, 1927, appellant paid the requisite premium to Price, who receipted for the same. It is stipulated that ''the sum of $26.17 for said third premium was not and no part thereof, was at any time paid to Eagle Indemnity Company, or its general agents, or any other person, firm or corporation, and Eagle Indemnity Company at no time issued any renewal certificate on said policy other than the renewal certificate above referred to, which extended said policy to December 19, 1926''. Appellant's residence was burglarized during the month of November, 1927. Sworn statements were regularly filed by the insured with said company, and demand was made for reimbursement, which was refused. By the terms of its ''Three Year Agreement Endorsement'' the company stipulated that it ''hereby agrees to renew this policy at date of expiration for a term of twelve months, beginning at noon on the 19th day of December, 1925, on payment of a premium of $39.26 and also at date of expiration of the second term of twelve months to renew for a further term of twelve months, beginning at noon of the 19th day of December, 1926, on payment of a premium of $26.17. The insured by the acceptance of this policy agrees to accept the renewals above referred to, and to pay the premiums therefor, but neither this agreement on the part of the company nor that made by the insured shall be held to abrogate the right of the parties to cancel this policy or either of the renewals at any time in accordance with the policy conditions.'' There is nothing tending to indicate that the policy had been terminated by either party, nor that the insured was advised of the insurer having severed Price's commission as a broker, although Campbell received no renewal certificate to December, 1927, for which he had paid Price the premium' as provided by the policy, ten months before the date of the loss. And the record is equally silent as to knowledge on the part of the insurer of payment of the last premium as an expression of intention to renew the policy.

There is much argument as to the ostensible authority of Price, and the obligations of insurance companies upon

payment of premiums to their authorized agents under the provisions of regular three-year contracts of insurance. But we think it beside the question inasmuch as the express conditions of the one-year policy with privilege of renewal as above recited are plain and specific. Upon acceptance of the policy the insured agrees that he will renew with the insurer, but by the mere issuance of the policy it does not follow that the latter insures for a period longer than one year, unless the insured shall remit each year in accordance with the "Three Year Agreement Endorsement" to the company through its agent or otherwise, and renew the same by a certificate "countersigned by a duly authorized official or agent of the company and attached to policy". One of the significant provisions of the contract between the parties provides that "the term of the policy is twelve months". Authorities cited by appellant wholly relate to contracts concededly executed or renewed, wherein the broker's authority was questioned. We are cited to no case in this state which is of assistance. In *Raynor* v. *National Casualty Co.*, 125 Misc. Rep. 174 [210 N. Y. Supp. 586], was presented a policy which was dated June 20, 1922, which "by its terms extends from noon of that day until noon of August 1, 1922, 'and for such further time as may be stated in the renewal receipts' ". A judgment in favor of the plaintiff was reversed upon the ground that the interpretation by the trial court "consists in disregarding the fact that this is not the case of a policy issued for a long term, like a year or more, with a requirement of say monthly payments during the time on the 1st of each month, and the provision that in case of default the policy might or should be voided, or substantially a situation of the possibility of the policy being cancelled by the nonperformance of a condition subsequent. This policy ended by its very terms on August 1, 1922, and after that time there was by virtue of the added provision, 'and for such further time as may be stated in the renewal receipts', a continuing offer by the company to renew the same whenever the assured by an additional premium accepted the offer, and for such additional time as might be stated in the corresponding receipt. Like provisions have received a similar construction in other jurisdictions. °(*National L. & A. Ins.*

*Co.* v. *Reams,* (Tex. Civ. App.) 197 S. W. 332; *Steele* v. *Great E. C. & I. Co.,* 158 Minn. 160 [197 N. W. 101].)"

The judgment is affirmed.

Thompson (Ira F.), J., and Archbald, J., *pro tem.,* concurred.