## THOMPSON *v.* INSURANCE COMPANY.

1. The payment of the annual premium upon a policy of life insurance is a condition subsequent, the non-performance of which may or may not, according to circumstances, work a forfeiture of the policy.
2. Where the policy provides that it shall be forfeited upon the failure of the assured to pay the annual premium *ad diem*, or to pay at maturity his promissory note therefor, the acceptance by the company of the note, although a waiver of such payment of the premium, brings into operation so much of the condition as relates to the note.
3. The omission of the company to give notice, according to its usage, of the day upon which the note will be due, is not an excuse for non-payment. *Insurance Company* v. *Eggleston* (96 U. S. 572) distinguished.
4. A parol agreement entered into at the time of giving and accepting such note cannot be set up to contradict the terms of the note and policy.
5. The failure to pay or tender the amount due on the note held in this case to be fatal to a recovery on the policy.

ERROR to the Circuit Court of the United States for the Southern District of Alabama.

This was an action on a policy of insurance for $5,000, issued by the Knickerbocker Life Insurance Company, the defendant in error, on the life of John Y. Thompson, for the benefit of his wife, Ruth E. Thompson, the plaintiff in error. The policy bore date Jan. 24, 1870, and was to continue during his life, in consideration of an annual premium of $410.20, payable on or before the twenty-fourth day of January in every year. He died Nov. 3, 1874. The complaint was in the usual form, setting forth the contract contained in the policy, his death, and the performance of the conditions of the policy by him and the plaintiff. The company pleaded the

general issue, and two special pleas, which set up in substance the same defence. The second plea, after setting forth the provisions of the policy for the payment of the annual premium, proceeds as follows : —

" Under said policy an annual credit or loan of a portion of said premium was provided for, and said policy also contained a condition or proviso that the omission to pay the said annual premium on or before twelve o'clock noon on the day or days above designated for the payment thereof, or that the failure to pay at maturity any note, obligation, or indebtedness (other than the annual credit or loan) for premium or interest due under said policy or contract, shall then and thereafter cause said policy to be void without notice to any party or parties interested therein.

" The defendant further says that the said annual premium was not paid on or before the twenty-fourth day of January, A. D. 1874, and thereupon the defendant did give time for the payment of said premium upon the condition named in the note hereinafter mentioned, and for the payment of said premium did take certain promissory notes of said Thompson, one of which was as follows : —

"$109.]                              NEW YORK, Jan'y 24th, 1874.
" Nine months after date, without grace, I promise to pay to the Knickerbocker Life Insurance Company one hundred and nine dollars, at Mobile, Alabama, value received, in premium on policy No. 2334, which policy is to be void in case this note is not paid at maturity, according to contract in said policy.
" No. 2334 was an error, No. 2331 being intended."

It then avers that the note was not paid when it became due, Oct. 24, 1874, and that by reason thereof the policy became void and of no effect before the death of the assured.

To these pleas four replications were filed, numbered 2, 3, 4, and 5, as follows : —
" 2d, That the said policy of insurance was renewed by said defendant on the twenty-fourth day of January, 1874, and continued in force until Jan. 24, 1875. That the payment of said note at maturity was not a condition precedent as alleged. That the said Thompson had the money in hand, was ready

and willing and intended to pay said note, but that before the maturity thereof he was taken violently ill, and before and at the time the same fell due was in bed, prostrated by a fatal disease, and in this condition remained until he died on the third day of November, 1874; that during all this time he was mentally and physically incapable of attending to his business, or knowing of and performing his obligations, and was *non compos mentis;* that the existence of said note was not known to the plaintiff.

"3d, That it was, and had been for many years before, and on the day said note fell due, the uniform usage and custom of said defendant in such cases to give notice of the day of payment to its policy-holders; such is and was the uniform usage and custom with all insurance companies, and the said defendant had in all cases adopted and acted on said usage, and in all its dealings with said Thompson had adhered to said usage, and gave notice of the day when such payments fell due; yet said defendant in this case failed to give any notice of the day of payment of said note, notwithstanding they knew said Thompson was in the city of Mobile, and was sick. Plaintiff avers that said Thompson was ready and willing to pay, had said notice been served as in previous cases, but acting on said usage he was deceived by want of said notice, and that the plaintiff had no notice of the existence of said note, or when the same fell due, wherefore and whereby said note was not paid.

"4th, That on the twenty-fourth day of January, 1874, said policy was renewed and entered in full force for one year, to wit, until Jan. 24, 1875. That said note was for the balance of the premium of that year, which defendant agreed should be deferred and paid as set out on said note; that by said agreement said policy was not to become void on the non-payment of the note alone at maturity as alleged in said plea, but was to become void at the instance and election of said defendant, and plaintiff avers that said defendant did not elect to cancel said policy or take any steps to avoid it or give any notice of such intention during the life of said John Y. Thompson, or since, and still holds said note against said estate of said Thompson.

"5th, And for further replication to the first and second special pleas by said defendant pleaded, plaintiff says that it was the general usage and custom adopted by said defendants, and practised by them before and after the making of said note, not to demand punctual payment of such premium notes on the days they fell due, but to give days of grace thereon, to wit, for thirty days thereafter, and the said defendants had repeatedly so done with said Thompson and others, and they led said Thompson to believe and rely on such leniency in this case, and thereby said Thompson was deceived, and said note not paid, and he did rely on them for such notice."

Demurrers to these replications were sustained by the court. The case was then tried upon the plea of the general issue. On the rejection of evidence at the trial, the same questions presented by the replications were raised. Exceptions were taken in due form and preserved on the record.

There was a judgment for the defendant. The plaintiff thereupon sued out this writ of error.

*Mr. J. Hubley Ashton* and *Mr. Thomas N. McCartney* for the plaintiff in error.

The policy having been renewed and continued in force by the company for a year on Jan. 24, 1874, when the note in question was given, the payment of that note, if a condition at all, was a condition subsequent operating by way of defeasance, and mere non-payment *ad diem* was not alone sufficient to effect an absolute forfeiture of the insurance. *Insurance Company* v. *French*, 30 Ohio St. 240.

The whole contract evidenced by the policy and the note, taken together, means, that, after the renewal receipt was given, the policy was voidable at the option of the company, and unless a forfeiture should be asserted and declared, at the proper time, the insurance remained. The case is essentially different from a purely unilateral contract, where the risk has not fully attached for the particular year in which the death occurred, and is like a release which is subject to be avoided by the happening of a condition subsequent, as, for example, the non-payment of a composition. The release is good and operative, unless itself subsequently avoided. *Newington* v. *Levy*, Law Rep. 5 C. P. 607.

The distinction between a precedent and a subsequent condition is as well marked in this contract as in others. *Giddings* v. *Insurance Company*, 102 U. S. 108; 2 Langdell, Cases on Contracts, p. 1009. There are no technical words whereby such conditions are distinguished. The governing rule is the fair intention of the parties to be collected from the transaction. *Porter* v. *Shepard*, 6 T. R. 668; *Finlay* v. *King's Lessee*, 3 Pet. 346; *Nicoll* v. *New York & Erie-Railroad Co.*, 12 N. Y. 121.

In the present case it cannot be supposed that it was intended that the mere non-payment of a fractional part of the premium *ad diem* should operate as the non-performance of a condition precedent. It would be unconscionable and oppressive to give the contract that effect. *Pordage* v. *Cole*, 1 Wms. Saund. 320 *b*; *Campbell* v. *Jones*, 6 T. R. 570; *Boone* v. *Eyre*, 1 H. Bl. 273, note; 2 W. Bl. 1312; *Graves* v. *Legg*, 9 Ex. 709; *Ellen* v. *Topp*, 6 id. 424.

The condition in question being at most a condition subsequent operating by way of defeasance, its performance was excused by the inevitable accident alleged by the plaintiff, and the liability of the company became absolute, in accordance with settled principles of jurisprudence. *People* v. *Bartlett*, 3 Hill (N. Y.), 570; *People* v. *Manning*, 8 Cow. (N. Y.) 297; *Carpenter* v. *Stevens*, 12 Wend. (N. Y.) 589; *Wolfe* v. *Howes*, 20 N. Y. 197; *Baldwin* v. *New York Life Insurance Co.*, 3 Bosw. (N. Y.) 530; *Davis* v. *Gray*, 16 Wall. 203.

The court erred in not overruling the defendant's demurrers. *Insurance Company* v. *Eggleston*, 96 U. S. 572; *Helme* v. *Philadelphia Life Insurance Co.*, 61 Pa. St. 107; *Insurance Company* v. *French*, 30 Ohio St. 240; *Mayer* v. *Mutual Life Insurance Co.*, 38 Iowa, 304; *Hanley* v. *Life Association of America*, 69 Mo. 380; *Leslie* v. *Knickerbocker Life Insurance Co.*, 63 N. Y. 27; *Nicoll* v. *New York & Erie Railroad Co.*, *supra*; *Newington* v. *Levy*, *supra*; *Teutonia Life Insurance Co.* v. *Anderson*, 77 Ill. 384; *Howell* v. *Knickerbocker Life Insurance Co.*, 44 N. Y. 276; *Mutual Benefit Life Insurance Co.* v. *Hillyard*, 37 N. J. L. 444; *Martine* v. *Insurance Company*, 53 N. Y. 339; Code of Alabama, sect. 3001.

*Mr. Fletcher P. Cuppy* and *Mr. Thomas H. Herndon*, contra.

MR. JUSTICE BRADLEY, after stating the facts, delivered the opinion of the court.

The questions presented for review in this case arise on the rulings of the court below on the demurrers of the defendant.

It appears from the special pleas that the policy contained the usual condition that it should become void if the annual premiums should not be paid on the day when they severally became due, or if any notes given in payment of premiums should not be paid at maturity.

The replications do not pretend that the note given for premium, which became due on the twenty-fourth day of October, 1874, was ever paid, or that payment thereof was ever tendered, either during the life of Thompson or after his death; but it is contended that such payment was not necessary in order to avoid the forfeiture claimed by the defendant.

First, it is contended that the mere taking of notes in payment of the premium was, in itself, a waiver of the conditional forfeiture; and for this reference is made to the case of *Insurance Company* v. *French*, 30 Ohio St. 240. But, in that case, no provision was made in the policy for a forfeiture in case of the non-payment of a note given for the premium, and an unconditional receipt for the premium had been given when the note was taken; and this fact was specially adverted to by the court. We think that the decision in that case was entirely correct. But in this case the policy does contain an express condition to be void if any note given in payment of premium should not be paid at maturity. We are of opinion, therefore, that whilst the primary condition of forfeiture for non-payment of the annual premium was waived by the acceptance of the notes, yet, that the secondary condition thereupon came into operation, by which the policy was to be void if the notes were not paid at maturity.

Beside this general answer the plaintiff set up, in her replications, various excuses for not paying the note in question, which are relied on for avoiding the forfeiture of the policy.

In the second replication the excuse set up is, that before the note fell due Thompson became sick and mentally and physically incapable of attending to business until his death on the third day of November, 1874, and that the plaintiff was igno-

rant of the outstanding note. We have lately held, in the case of *Klein* v. *Insurance Company* (*supra*, p. 88), that sickness or incapacity is no ground for avoiding the forfeiture of a life policy, or for granting relief in equity against forfeiture. The rule may, in many cases, be a hard one; but it strictly follows from the position that the time of payment of premium is material in this contract, as was decided in the case of *New York Life Insurance Co.* v. *Statham*, 93 U. S. 24. Prompt payment and regular interest constitute the life and soul of the life insurance business; and the sentiment long prevailed that it could not be carried on without the ability to impose stringent conditions for delinquency. More liberal views have obtained on this subject in recent years, and a wiser policy now often provides express modes of avoiding the odious result of forfeiture. The law, however, has not been changed, and if a forfeiture is provided for in case of non-payment at the day, the courts cannot grant relief against it. The insurer may waive it, or may by his conduct lose his right to enforce it; but that is all.

The third replication sets up a usage, on the part of the insurance company, of giving notice of the day of payment, and the reliance of the assured upon having such notice. This is no excuse for non-payment. The assured knew, or was bound to know, when his premiums became due. *Insurance Company* v. *Eggleston* (96 U. S. 572) is cited in support of this replication. But, in that case, the customary notice relied on was a notice designating the agent to whom payment was to be made, without which the assured could not make it, though he had the money ready. As soon as he ascertained the proper agent he tendered payment in due form. It is obvious that the present case is very different from that. The reason why the insurance company gives notice to its members of the time of payment of premiums is to aid their memory and to stimulate them to prompt payment. The company is under no obligation to give such notice, and assumes no responsibility by giving it. The duty of the assured to pay at the day is the same, whether notice be given or not. Banks often give notice to their customers of the approaching maturity of their promissory notes or bills of exchange; but they are not obliged to

give such notice, and their neglect to do it would furnish no excuse for non-payment at the day.

The fourth replication sets up a parol agreement of defendant made on receiving the promissory note, that the policy should not become void on the non-payment of the note alone at maturity, but was to become void at the instance and election of the defendant, which election had never been made. As this supposed agreement is in direct contradiction to the express terms of the policy and the note itself, it cannot affect them, but is itself void. We did hold, in Eggleston's case, it is true, that any agreement, declaration, or course of action on the part of an insurance company, which leads a party insured honestly to believe that by conforming thereto a forfeiture of his policy will not be incurred, followed by due conformity on his part, will estop the company from insisting upon the forfeiture. An insurance company may waive a forfeiture or may agree not to enforce a forfeiture ; but a parol agreement, made at the time of issuing a policy, contradicting the terms of the policy itself, like any other parol agreement inconsistent with a written instrument made contemporary therewith, is void, and cannot be set up to contradict the writing. So, in this case, a parol agreement supposed to be made at the time of giving and accepting the premium note cannot be set up to contradict the express terms of the note itself, and of the policy under which it was taken.

The last replication sets up and declares that it was the usage and custom of the defendants, practised by them before and after the making of said note, not to demand punctual payment thereof at the day, but to give days of grace, to wit, for thirty days thereafter ; and they had repeatedly so done with Thompson and others, which led Thompson to rely on such leniency in this case. This was a mere matter of voluntary indulgence on the part of the company, or, as the plaintiff herself calls it, an act of " leniency." It cannot be justly construed as a permanent waiver of the clause of forfeiture, or as implying any agreement to waive it, or to continue the same indulgence for the time to come. As long as the assured continued in good health, it is not surprising, and should not be drawn to the company's prejudice, that they were willing

to accept the premium after maturity, and waive the forfeiture which they might have insisted upon. This was for the mutual benefit of themselves and the assured, at the time ; and in each instance in which it happened it had respect only to that particular instance, without involving any waiver of the terms of the contract in reference to their future conduct. The assured had no right, without some agreement to that effect, to rest on such voluntary indulgence shown on one occasion, or on a number of occasions, as a ground for claiming it on all occasions. If it were otherwise, an insurance company could never waive a forfeiture on occasion of a particular lapse without endangering its right to enforce it on occasion of a subsequent lapse. Such a consequence would be injurious to them and injurious to the public.

But a fatal objection to the entire case set up by the plaintiff is, that payment of the premium note in question has never been made or tendered at any time. There might possibly be more plausibility in the plea of former indulgence and days of grace allowed, if payment had been tendered within the limited period of such indulgence. But this has never been done. The plaintiff has, therefore, failed to make a case for obviating and superseding the forfeiture of the policy, even if the circumstances relied on had been sufficiently favorable to lay the ground for it. A valid excuse for not paying promptly on the particular day is a different thing from an excuse for not paying at all.

Courts do not favor forfeitures, but they cannot avoid enforcing them when the party by whose default they are incurred cannot show some good and stable ground in the conduct of the other party, on which to base a reasonable excuse for the default. We think that no such ground has been shown in the present case, and that it does not come up to the line of any of the previous cases referred to, in which the excuse has been allowed. We do not accept the position that the payment of the annual premium is a *condition precedent* to the continuance of the policy. That is untrue. It is a condition subsequent only, the non-performance of which may incur a forfeiture of the policy, or may not, according to the circumstances. It is always open for the insured to show a waiver

of the condition, or a course of conduct on the part of the in-
surer which gave him just and reasonable ground to infer that
a forfeiture would not be exacted.   But it must be a just and
reasonable ground, one on which the assured has a right to
rely.

*Judgment affirmed.*