SECURITY LIFE & ANNUITY CO. OF
AMERICA v. UNDERWOOD.

(Court of Civil Appeals of Texas. Galveston.
June 20, 1912. Rehearing Denied
Oct. 10, 1912.)

1. INSURANCE (§ 349*) — FORFEITURE — NONPAYMENT OF PREMIUM NOTE—VALIDITY OF PROVISION.

A provision in an extension note, given for a premium due, and in the insurer's receipt, for forfeiture on account of a default in payment, is valid, especially in view of express provisions of the policy that the amount was payable, "all premiums and indebtedness hereon having been fully paid."

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 891, 895–904; Dec. Dig. § 349.*]

2. INSURANCE (§ 310*) — FORFEITURE — NONPAYMENT OF PREMIUM NOTE.

Under the provisions of insurer's receipt and of a note given to extend a policy until default in payment of the note when all rights thereunder should cease and the policy be ipso facto null and void, failure to pay the note at maturity forfeited the policy and no action on the part of the insurer was required to declare such forfeiture.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 703; Dec. Dig. § 310.*]

3. INSURANCE (§ 372*)—WAIVER—WHAT PROVISIONS MAY BE WAIVED—NONPAYMENT OF PREMIUM.

A forfeiture of a policy for nonpayment of premium or of a premium note may be waived by the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 941; Dec. Dig. § 372.*]

4. INSURANCE (§ 392*) — WAIVER — NONPAYMENT OF PREMIUMS.

An unconditional demand for payment of a premium, evidencing an intention of the insurer to keep the policy in force, will be considered as a waiver of forfeiture for failure to pay past-due premiums; and where an insurer on default in payment of an extension note, due January 30th, by letter written in April, called attention to the quarterly premium due in March, there was a waiver of nonpayment and an election to keep the policy in force, and the insurer's letter in May referring to and arranging payment of the March premium then due and unpaid was a waiver both of the December note and the March premium, but the insurer's letter and demand on July 11th, with reference to the premium due June 30th, on which the right of forfeiture did not accrue for 30 days, was not a waiver of a forfeiture for nonpayment of the June premium.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1041–1070; Dec. Dig. § 392.*]

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

5. INSURANCE (§ 646*)—ACTION ON POLICY—BURDEN OF PROOF—WAIVER.

Where there has been a failure in the payment of a premium or a premium note, and a policy by its express provision has become forfeited, the burden of showing waiver is upon the insured, which may be done by circumstances showing an intention on the part of the company not to take advantage of the default, and to continue the policy in force notwithstanding.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1645–1668; Dec. Dig. § 646.*]

6. CONTRACTS (§ 318*) — CONSTRUCTION OF POLICY—PROVISIONS FOR FORFEITURE.

The law does not favor forfeiture, and very slight circumstances will be taken advantage of in order to avoid the effect of a forfeiture.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1508–1527; Dec. Dig. § 318.*]

7. INSURANCE (§ 360*)—PREMIUMS—REDUCTION BY APPLICATION OF DIVIDENDS.

Where the cash part of a quarterly premium due in June and payable in advance was unpaid, the insured had no right to require the company to apply thereon a distribution of less than the full cash part of the premium, paid some time in August under an independent "board contract," since he had no right to require the acceptance of less than the full cash part of the premium.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 913, 916–924; Dec. Dig. § 360.*]

8. INSURANCE (§ 349*)—NONPAYMENT OF PREMIUM NOTE—PROVISIONS OF POLICY—FORFEITURE.

A policy payable, "all premiums and indebtedness hereon having been fully paid," contained no provision for a forfeiture upon default in the payment of a note given to extend the policy after a premium was due, but the note and the insurer's receipt contained an express provision that, upon default in payment of the note, the insured's rights thereunder terminated, and the policy became ipso facto void. *Held*, that the policy was avoided by default in payment of the extension note.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 891, 895–904; Dec. Dig. § 349.*]

9. INSURANCE (§ 668*)—ACTION ON POLICY—QUESTION FOR JURY—FORFEITURE.

Whether an insurer on default in payment of a note given to extend the policy after premium was due and unpaid exercises its option to forfeit the policy for nonpayment of the note or waives its right is a question of fact for the jury.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1732–1770; Dec. Dig. § 668.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Mrs. Fannie F. Underwood against the Security Life & Annuity Company of America. Judgment for plaintiff on one policy and for defendant on another, and both parties appeal. Judgment for plaintiff reversed and rendered for defendant, and judgment for defendant affirmed.

F. W. Bull, of Chicago, Ill., and R. W. Franklin, of Houston, for appellant. Andrews, Ball & Streetman, of Houston, for appellee.

REESE, J. This is an action by Mrs. Fannie F. Underwood against the Security Life & Annuity Company of America to recover the amount of two life insurance policies for $5,000 each issued by the defendant company, for her benefit, on the life of her husband, George B. Underwood. The policies were numbered, respectively, 1319 and 6098. Upon trial without a jury judgment was rendered in favor of plaintiff for the amount due upon policy 1319, and in favor of defendant as to policy 6098. From the judgment defendant appeals.

By appropriate cross-assignments of error, plaintiff brings up for revision the judgment against her as to policy No. 6098. The petition alleged the issuance of the policies, the payment of premiums, and that the policies were in full force and effect at the date of the death of the said George B. Underwood, which occurred September 7, 1907. Defendant admitted the issuance of the policies, and the death of the insured as alleged, but alleged that the policies had become forfeited under the terms thereof, and the terms of certain notes given by the insured for premiums due because of nonpayment of the premiums and said premium notes, and that at the date of the death of said Underwood the policies were null and void. The case turned entirely upon the issue of forfeiture as pleaded by appellant.

The evidence authorizes the following conclusions of fact:

The defendant company on December 31, 1903, issued life policy No. 1319 on the life of George B. Underwood, his son, Edwin F. Underwood, beneficiary, for the sum of $10,000. Afterwards the amount was reduced to $5,000 and the beneficiary changed to Mrs. Fannie F. Underwood, wife of the insured. On December 30, 1905, the defendant company issued to said Underwood its policy No. 6098 for $5,000, payable to his said wife. Both policies contained the usual provisions as to forfeiture for nonpayment of premiums at maturity, but providing that "there shall be no forfeiture if such premium is tendered with interest at the rate of five per cent. per annum in thirty days," and contained a provision that premiums might be paid by paying a certain proportion thereof in cash and a certain proportion to be paid by way of loan from the company to be charged against the reserve, or what is called the loan value, of the policy. Each of the policies contained the following provisions:

"Special Provision. (7) It is hereby agreed: First, that the company shall, if requested by the insured, advance for the insured thirty per cent. of each premium paid hereunder during the dividend period, which shall be a lien against this policy, accumulating at three and one-half per cent. interest, compounded annually, until paid by the application of cash dividends or otherwise; and second, that in event of the death of the insured during the dividend period and while this policy is in force, a mortuary dividend equal to thirty per cent. of all premiums

heretofore due hereon, accumulated at three and one-half per cent. interest, compounded annually, shall be paid with the principal sum insured hereunder.

"Right to Cash Loan. (8) At any time after this policy has been in force for one full year and premiums have been paid up to the anniversary of the insurance next after the date when the loan is made, the company will lend upon demand, on the sole security of this policy, the respective sum named in the table of cash loans herein, which shall include any previous loans then unpaid. Interest shall be at five per cent. per annum in advance.

"Right to Automatic Nonforfeiture. (9) If any premium shall not be paid when due, the same shall be charged against the policy as a loan, if the respective loan value be sufficient to enable such advance, after providing for the existing loans and accrued interest: Provided, that if not sufficient to cover the entire premium due, a premium for a shorter period, but no less than a monthly premium, shall be charged, if the available loan value is sufficient. Notice of such advance shall be mailed to the insured, and at any time while this policy is sustained in force the payment of premiums may be resumed."

Each of the policies also contained a provision that at the death of the insured, "all premiums and indebtedness hereon having been fully paid," the amount of the policy would be paid to the beneficiary. The premiums upon policy 1319 were from about June, 1904, payable quarterly in advance on December 31st, March 31st, June 30th, and September 30th of each year. The amount of each premium to be paid in cash was $30.75, and by way of loan under the aforesaid provisions of the policy $13.15. The premiums upon No. 6098 were payable annually, the amount being $181.50, of which $136.15 was payable in cash and $45.35 by way of loan from the company. From the first the insured availed himself of this loan privilege, paying only the cash required by the terms of the policy. The payments and loans were regularly made so as to keep the policies in force up to December, 1906, when the insured, on account of his straitened circumstances, found himself unable to make the usual cash payment, whereupon after correspondence with the company, and by agreement with it, the insured executed two notes, one for $136.15 for the cash part of the premium upon policy 6098, and one for $30.75, for the cash premium due upon policy 1319. As it will be necessary to a clear understanding of the real issues presented, one of these notes is here set out in full: "$30.75. Houston, Texas, December 31, '06. Thirty days after date I promise to pay to the Security Life and Annuity Company of America, at its executive office, for value received, the sum of thirty and 75/100 dollars, with interest at six per cent. per annum from date, with attorney's fees, and waiving relief from valuation and appraisement law, same being the cash amount of the premium due and payable this 31st day of December, 1906, on policy No. 1319, of said company. I understand and agree that in consideration hereof, said policy is extended until default is made in payment of this note, when all rights and benefits secured thereby shall cease and determine without notice, and said policy shall be ipso facto null and void, except as otherwise provided therein. I hereby agree that this note shall not be deemed a payment for life insurance, but only for an extension of the time for the payment of the same and the nonpayment of this note when due, and the determination of said insurance by reason thereof, shall not impair the validity of this note, but the same shall become due and payable for the proportion of its face and interest that the time the insurance has been extended for bears to the whole time covered by said premium. I hereby agree that upon nonpayment of this note, or any extension thereof, when due, the company is hereby authorized to charge against the reserve value of said policy, if any, the proportion of the amount of its face and interest, that the time the said policy was continued in force by this note, or any extension thereof, bears to the whole time covered by said premium; and that the amount of said policy payable during the extended period given in 'First Option' be proportionately reduced. Should said reserve value be insufficient to pay the amount due upon this note as above provided, the balance remaining is to be due and payable." The other note is identical, except as to amounts, date, and maturity, being for $136.15, dated December 30, 1906, and due 90 days after date. For these notes the defendant company executed its receipts identical except as to amounts. One of them is here set out in full: "$136.15. Chicago, Ill., Dec. 30, 1906. Received of George B. Underwood of 1418 Rusk Ave., Houston, Texas, ninety (90) day note of this date, due Mar. 30, 1907, for $136.15, for which policy No. 6098, of the Security Life and Annuity Company of America is continued in force until the maturity of the note. On payment of said note on or before maturity, the company's regular premium receipt will be delivered to the insured. The nonpayment of said note at maturity will render said policy null and void, and terminate all rights thereunder, except as otherwise expressly provided in said note and policy. Security Life and Annuity Company of America, Henry C. Brown, Secretary. Not valid unless countersigned by W. A. Jenkins, Comptroller." The balance of the premium on policy 1319, to

wit, $13.15, was made up by the loan on the policy, and the same was done as to the balance of the premium due on policy 6098.

Neither of these notes was ever paid, nor was any payment ever made by the insured of any premiums upon either policy except by these notes and the automatic loans after this date. Appellee relies upon certain acts of appellant as constituting a waiver of the forfeiture for nonpayment of the notes, and also for nonpayment of the subsequently accruing quarterly premiums due March 31st and June 30th, on policy 1319, and claims, also, that there was a sufficient amount of the unexhausted loan value on that policy, together with what is claimed to have been due to insured upon a certain "board contract," to carry the policy through September, or at least until after the date of his death on September 7, 1907. To show such waiver the following letters, written by appellant to appellee on the dates named were introduced:

"April 11, 1907. I desire to direct your attention to the premium on your policy No. 1319, which became due on March 31, 1907. We are particularly desirous of having you continue your insurance with this company, and would respectfully ask that you advise us the reason for your not remitting your premium when due. Thanking you for the courtesy of a prompt reply, I remain."

"May 8th, 1907. We have not as yet received payment of the quarterly premium on your policy No. 1319, which became due on March 31, 1907. Heretofore you have made payments very regularly and it is likely an oversight on your part that you have failed to make provision for the last payment. If for any reason you are unable to make payment at this time, we trust you will inform us, as we desire to lend our assistance wherever it will be an accommodation to our policy holders."

"July 11, 1907. The premium of $30.75 on your policy No. 1319 became due June 30, 1907, and remains unpaid. We are particularly desirous of having you continue your insurance with this company and would respectfully ask that you advise us the reason for your not remitting your premium when due."

The so-called "board contract" becomes important, as the conclusion of the trial court that policy 1319 was in force at the date of the death of the insured rests upon it. It is written in the usual jargon used by insurance companies, seemingly intended to be intelligible only to experts in insurance, but we gather from it that it provided that in consideration that the insured shall "annually furnish the company, upon its request, the names of ten people, residents of his county, whom he deems insurable," and, further, "shall cause the company to receive the regular premiums on an amount of insur-

ance aggregating at least ten thousand dollars" the company, by some sort of an arrangement, would pay the insured, within 60 days from June 30th, annually during the life of the contract, a certain amount based upon the amount of the insurance upon which the insured causes the premiums to be paid and the total insurance in force issued during the 10 years between July 1, 1903, and June 30, 1913. With regard to this "board contract," it was shown that the amount paid to the insured in August, 1906, as his share of the distribution provided for was $25.90, and it was shown by one witness that the amount due upon one of these contracts to a person who held one and who had complied with the conditions for the year 1907 was a little more than that. It was shown that when the time came to make this distribution by the defendant company, in August, 1907, the policies herein sued on were not counted in as entitled to share, on the ground that they had been then canceled. If the insured had been entitled to share in this fund, at the time of the distribution in August, 1907, it seems to be agreed that he would have been entitled to $26, which, by the terms of the contract, the defendant company would have been required to pay him. The "board contract" was not a part of the contract of insurance, but was an entirely independent contract.

With regard to policy 6098, the premium note given for the annual premium due December 31, 1906, was never paid nor any part of it. To show waiver, it was shown that this note was sent to a bank in Houston, and that, not having been paid, it was on April 7, 1906, returned to the defendant company. It does not appear what instructions the bank had about it, nor when it was sent to the bank. The only thing shown with regard to this is that it was in the bank, and was returned on the date named. This note was due March 30th, three days of grace added carried it to April 3d. On December 10, 1907, the company received notice of the death of the insured, and on the next day it sent out, directed to G. B. Underwood, 1418 Rusk street, Houston, the following unsigned printed notice: "The third annual premium of $181.50 on policy No. 6098 will be due December 30, 1907, on the life of George B. Underwood, 1418 Rusk Street, Houston, Texas, payable as follows: Gross $181.50. Loan $45.00. Cash $136.15."

We agree with the following conclusions of fact of the trial court as to these facts, with regard to policy 6098: "As to policy No. 6098, the plaintiff gave a note and the note was sent to the bank in Houston for collection when it matured, and payment was not made on it, and it was returned, and that seems to have been treated as the end of that matter. I do not consider the

sending of the notice of December 10, 1907, was more than a formality, or in the nature of a clerical detail, and not as a recognition of the existence of liability; or, in other words, was sent out on a printed form used in ordinary course of business, it having been shown that such notices are often sent out by subordinates without the knowledge of their superior officers, and the secretary of the company received a letter announcing death of assured the day before the notice was sent." The trial court found that exclusive of the board contract the policy reserve was not sufficient to carry policy 1319 to September 7, 1907 (the date of the death of insured). This finding is correct, and, further, we find that it was not shown that this policy had any loan value on June 30, 1907. The court found, which finding we adopt as correct, that it was not shown that the December note for $30.75 or the premium due March 30, 1907, on policy 1319 was paid, to which we add that it was clearly shown that the premium due June 30, 1907, on this policy was not paid. It is not contended by appellee that the cash part thereof was paid otherwise than by the proceeds of the board contract.

The court found as a conclusion of law: "There was manifestly a waiver of the right of forfeiture upon policy No. 1319, and that repeated demands for subsequent premiums up to the premium for June, and including that, manifested and made clear that there had been no forfeiture, but the policy was still treated as in force and was desired to be continued, and therefore it was an existing liability for the sum of $5,000 at the time of the death of the insured, and I find for plaintiff on this policy for $5,000, with 6 per cent. interest from December 19, 1907."

By its first assignment appellant complains of this conclusion. This assignment presents the entire question of the correctness of the judgment as to this policy. The policy provides as follows: "This contract is based on the receipt of premiums annually in advance; but premiums may be paid in semi-annual, quarterly, or monthly installments in advance as per the company's rates for such payments. * * * Failure to pay any premiums when due will render this policy wholly void and forfeit all premiums paid the company, except as herein provided." It was further provided that the company would waive such default and accept payment provided the amount of such premium was paid with interest at 5 per cent. per annum from the date of default within 30 days thereafter.

[1] There was no express provision in the policy for forfeiture on account of default in payment of any notes given for premiums, but such provision was expressly made in the note given for the premium due December 30, 1906, and in the receipt given therefor, as shown in our fact conclusions setting

out such note and receipt in full. As will be more particularly shown in discussing appellee's cross-assignments of error as to policy 6098, this forfeiture provision in the note and receipt was valid and enforceable, especially in view of the express provision of the policy that the amount was payable "all premiums and indebtedness hereon having been fully paid."

[2] Under the plain provisions of the note and receipt given for December premium, on failure to pay that note at maturity, the policy lapsed and ipso facto became null and void, and the same result followed the failure to pay the premiums due March 31st and June 30th, and no action on the part of the company was required to declare such forfeiture. 2 Cooley, Briefs on Ins. p. 1873; Laughlin v. Fidelity, etc., Ins. Co., 8 Tex. Civ. App. 448, 28 S. W. 413, and cases cited; Nat. Ins. Co. v. Reppond, 81 S. W. 1013; Nat. Ins. Co. v. Manning, 38 Tex. Civ. App. 498, 86 S. W. 618; Iowa Ins. Co. v. Lewis, 187 U. S. 336, 23 Sup. Ct. 126, 47 L. Ed. 204. This principle, in so far as the failure to pay premiums, when due, is concerned, seems to be conceded by appellee.

[3, 4] But it is equally as well settled that such forfeiture may be waived by the insurer, and that an unconditional demand for payment of a premium, evidencing an intention of the insurer to keep the policy in force, will be considered a waiver of forfeiture for failure to pay past-due premiums. 3 Cooley, Briefs on Ins. p. 2459. The trial court was correct, therefore, in holding that the letter of April 11, 1907, calling the attention of the insured to the premium "which was due on March 31, 1907," was a waiver of the forfeiture on account of the failure to pay the December note, which was due January 30, 1907. Unless the company waived the forfeiture and elected to keep the policy in force, there would have been no premium due on March 31st. This could not be considered as a waiver of the forfeiture on account of failure to pay the premium due March 31st, for the reason that the right to such forfeiture did not accrue until 30 days thereafter, to wit, May 1, 1907. But the letter of May 8, 1907, from the company to the insured, with reference to the premium due March 31, 1907, as still due and unpaid, for the reasons aforesaid must be treated as a waiver of the forfeiture both for nonpayment of the December note and the March premium, then more than 30 days overdue. This letter is inconsistent with any conclusion that at that time the company considered the policy forfeited. This was emphasized, so far as concerns the forfeiture on account of default in payment of the December note and March premium, by the letter of July 11, 1907, with reference to the premium dated June 30th, which is referred to as unpaid. We are of the opinion, however, that this last letter cannot be treated as a waiver of the forfeiture subsequently ac-

cruing for failure to pay the premium due June 30th. The right to forfeit for this default did not accrue until 30 days after the default. By the plain terms of the policy the default was automatic unless waived, if payment was not made with 5 per cent. interest within 30 days after default; that is, on or before July 30th. It cannot be said that the company by making demand for payment 20 days before any right to forfeiture accrued elected to waive the forfeiture when such right did thereafter accrue.

[5, 6] The failure to pay being unequivocally shown, the forfeiture occurs ipso facto, and the policy became null and void by its plain terms, unless such forfeiture was waived, and the burden of showing such waiver was upon the insured. This might be done by circumstances showing an intention on the part of the company not to take advantage of the default, and to continue the policy in force notwithstanding, and it is a well-settled principle that the law does not favor forfeiture, and that very slight circumstances will be taken advantage of in order to avoid the effect of a forfeiture. Phenix Ins. Co. v. Tomlinson, 125 Ind. 84, 25 N. E. 126, 9 L. R. A. 317, 21 Am. St. Rep. 203; Murray v. Home Benefit Life Ass'n, 90 Cal. 402, 27 Pac. 309, 25 Am. St. Rep. 133. But it seems to us that to take the letter of July 11th as a basis for declaring a waiver of the forfeiture, the right to which would not accrue until twenty days thereafter, is not justified by the rule of equity referred to, but is in fact to refuse to enforce a forfeiture plainly provided for in the policy and in favor of the insured in a case where he has shown by his very act that he did not intend to pay either this premium or the two preceding ones. "Courts do not favor forfeiture, but they cannot avoid enforcing them when the party, by whose default they are incurred, cannot show some good and stable ground in the conduct of the other party on which to base a reasonable excuse for the default." Thompson v. Insurance Co., 104 U. S. 260, 26 L. Ed. 765.

But the judgment of the trial court seems to rest mainly upon the proposition that the letters referred to showed a waiver of the forfeiture for default in the payment of the December note and the March premium, and that, when the next premium became due on June 30th, the money due the insured from the board contract was sufficient to pay enough of this premium to carry the policy beyond the date of the death of the insured, September 7th. It is true that the court in its tenth conclusion of fact finds that there was sufficient to carry the premiums over until after September; that is, entirely through the quarter during which the death occurred. We cannot understand how, in any view of the evidence, this result could have been reached. It is not contended that in any event the amount due on this board contract could have been more than $26. That is what appellee claims, and, seeming to doubt the correctness of the court's finding that it was sufficient to carry the policy through September, she seeks to apply to this amount the same effect as is given to another provision of the policy (to be hereafter referred to) under which the amount due upon this contract, if more than sufficient to pay one month's premium, should be applied pro rata upon the quarterly premium due June 30th, and that so applied the $26 would pay sufficient of the cash portion of this premium of $30.75 as to carry the policy beyond September 7th. We think the evidence shows conclusively that there was nothing due upon this contract. In the first place, it was one of the express conditions of the contract that the insured "shall cause the company to receive the regular premiums on an amount of insurance of ten thousand dollars." It is undisputed that of this annual premium on policy 6098, due December 31, 1906, the insured had not paid anything, and the court properly found that this policy was forfeited. It further is undisputed that of the quarterly premiums due on policy 1319 on December 31st, March 31st, and June 30th the insured had not paid anything. So that it is conclusively shown that no part of this express condition upon which the insured was to be entitled to anything on this board contract had been complied with at the time the distribution was to be made "within sixty days after the 30th June." And it is also conclusively shown that it was so treated by the company. If it should be contended that the waiver of the forfeiture for nonpayment of the December note, and the March premiums was equivalent to "causing the company to receive these premiums" so far as concerns policy 1319, still that would not be a compliance with the condition which required the payment of the regular premiums on ten thousand dollars of insurance.

[7] But if we concede (and under the undisputed evidence there is absolutely no ground for the concession) that there was at the time of the distribution under the board contract, which all the evidence shows was made some time in August, as much as $26 due, by what rule of law can we say now that the company should be required to apply the same pro rata upon the cash part of the premium due June 30th, which was $30.75, and thus carry the policy beyond September 7th, the date of the death of the insured? By the express terms of the policy the premiums were required to be paid quarterly in advance. The insured had no right, if the amount had been tendered in cash, to require the company to accept less than the full cash part thereof in payment pro rata. Certainly it would be contrary to the express provisions of the contract to allow the insured to demand of the company when a quarterly premium became due that it apply a less amount, which it owed him on an

independent contract, to the payment of a part of the premium, yet this is what is urged by appellee, and to accomplish this result she seeks to apply to this condition the provisions of paragraph 9 of the policy hereinbefore set out, which provides for such pro rata application of the loan value of the policy in case a premium shall not be paid. To give such effect to the board contract and the amount due thereon, if any, or any other indebtedness of the company to the insured, would be to make a contract for the parties which neither of them ever intended or thought of. That there is no right in the insured to pay less than the entire premium stipulated for, at the time due, in such a policy as this, is well settled. Hudson v. Knickerbocker Life Ins. Co., 28 N. J. Eq. 167. To hold that the effect of the evidence in any possible view of it is to show a waiver of the forfeiture to pay the quarterly premium due June 30th would, we think, be stretching farther than the court has any right to do the doctrine that on account of its disfavor of forfeiture a court of equity will take advantage of any circumstance tending to show that the insurance company elected not to take advantage of the ground of forfeiture, but to treat the policy as still in force. The evidence shows that the insured never at any time made any attempt to pay the December note due January 31, 1907, the premium due March 31st, or that due June 30th. It is as clear as anything can be made by inference from admitted facts that the insured did not intend to keep this policy going as a live policy.

This renders it unnecessary to pass upon the other assignments of error so far as concerns policy 1319. So much of the judgment of the court as sustains the right of appellee to recover on this policy finds no support in the evidence as we view it upon the most favorable view to appellee which can be taken of it. The case was fully developed in the trial court, and we can properly do nothing except to reverse the judgment in favor of appellee, and render judgment here that she take nothing as to policy 1319.

This brings us to the cross-assignments of error of appellee complaining of the judgment in favor of appellant as to policy 6098, the facts with regard to which have been fully set out.

[8] Under her first and second cross-assignments of error, appellee asserts the general proposition that, one full year's premium having been paid on this policy 6098, she, as beneficiary, had a vested interest therein, and that as the policy itself did not provide for a forfeiture for nonpayment at maturity of the note given for the premium due December 31, 1906, the policy would not be forfeited for such default, notwithstanding the note and receipt each contained such express provisions. In support of this proposition, appellee cites the case of Arnold v.

Empire Mutual Annuity & Life Ins. Co., 3 Ga. App. 685, 60 S. E. 470, by the Court of Appeals of Georgia. We have read the opinion in this case, with great care. The views of the court are set out with clearness and ability and the review of the cases appears to be very thorough. There is no question that the decision fully supports appellee's contention. The case rests largely for support upon Insurance Co. v. French, 30 Ohio St. 240, 27 Am. Rep. 443, which the court considers as approved by the Supreme Court of the United States in Thompson v. Ins. Co., 104 U. S. 252, 26 L. Ed. 765. From the following quotation from the syllabus in the French Case a clear conception can be gathered of the question decided: "A policy of life insurance contained the usual clause of forfeiture for nonpayment of premiums. Departing from the strict rules of the company, a duly authorized agent had allowed the cash part of the premium to be paid one half cash, the other half by a short note. Upon the 6th of July, 1867, the day the premium was due, the agent received the check of assured for the half cash due, and a six months note, giving the renewal receipt for a year. The note contained the clause 'if not paid at maturity said policy is to be null and void.' Neither check nor note was paid. Held, (1) the mere fact that the note was not paid at maturity did not of itself avoid the policy. It gave the insurance company the option of declaring a forfeiture, but this option must be asserted by clear and unequivocal acts. The clause of forfeiture, being inserted in the note for the benefit of the company, may be waived by failure to act, or other circumstances evincing an intention not to claim the benefit of the stipulation. Whether the company has exercised such option, or waived their rights, is a question of fact for the jury under all the circumstances of the case." An examination of the opinion, however, discloses that the note was very different in its terms from the note given by the insured in this case, and the case lacks the further fact, which is present in this case, that a receipt was given for the note, which is set out in the former part of this opinion, from which it appears that the policy was only to continue in force until the maturity of the note, that on payment of the note a regular receipt would issue, and that "nonpayment of the note at maturity will render such policy null and void and terminate all rights thereunder, except as expressly provided in said note and policy." In the light of what is said in the opinion in the Arnold Case, it is significant that this policy contains substantially the same language as was contained in the policy under discussion in Bank of Commerce v. N. Y. Life Ins. Co., 125 Ga. 552, 54 S. E. 643, to wit, that upon the death of the insured the amount is payable "all premiums and indebtedness hereon having

been fully paid." To our minds this clearly distinguishes this case from both the French and Arnold Cases according to the opinion in the latter case. This clause in the contract itself clearly contemplates a class of indebtedness other than the premiums due, which must be paid as a condition of payment of the policy, and according to the opinion in the Arnold Case brings the present case under the authority of Bank of Commerce v. N. Y. Life Ins. Co., supra. As applied to the facts of the present case, the doctrine does not seem to us sound that the forfeiture clauses in the note and receipt are nugatory because the policy itself does not in express terms provide for forfeiture for failure to pay notes given for premiums. When the December premium became due, the insured found himself unable to pay the cash part. The company then had the clear right both as to the insured and the beneficiary to allow the policy to forfeit automatically as provided. In order to avoid this, the insured was allowed to continue the policy in force upon the express conditions contained in the note and receipt. There can be no question that this action was taken, and this grace extended expressly for the benefit of the beneficiary as well as the insured. Having received the benefits of the grace extended, it would be inequitable and unjust to allow the appellee now to say that the conditions upon which the grace was extended are nugatory because not contained in the policy, especially in view of the express condition of the policy that the amount should not be payable if there was any indebtedness due, as above referred to. We do not agree with the opinion in the Arnold Case that there is any approval of the French Case to be gotten out of the case of Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 23 Sup. Ct. 126, 47 L. Ed. 204. That opinion really supports the conclusion at which we have arrived. In 3 Cooley, Briefs on Insurance, p. 2272, it is said that the doctrine asserted in the French Case does not find support in later cases, citing the case of Ressler v. Fidelity Mutual Life Ins. Co., 110 Tenn. 411, 75 S. W. 735, which, as stated in the text, "lays down the doctrine that where a note given in payment of a premium on a life insurance policy provides that, if not paid at maturity, the policy shall be void, and a receipt given for the note states that it is agreed that a past-due note is not payment, and any obligation given in exchange for the receipt, when not paid at maturity, shall render the receipt and policy void, the policy is rendered void by a failure to pay the note at maturity, though the policy contains no stipulation to that effect." The author evidently regarded the Lewis Case, supra, as in line with the Tennessee case. But without continuing this discussion, if the doctrine of the French and Arnold Cases were sound and applicable to the present case, still the judgment of the trial court that policy 6098 was forfeited for failure to pay the note must be sustained.

[9] In the French Case it is said that whether the company had in such case exercised its option to forfeit for nonpayment of the note or waive its rights is a question of fact for the jury. Passing upon this question of fact the court in this case, sitting as a jury, held that there had been such forfeiture, and there is abundant evidence to sustain such finding.

Another question is suggested by the evidence which it is not necessary to decide, but which we are inclined to think is entitled to serious consideration. The note given for the annual premium on policy 6098 has the following clause: "I understand and agree that in consideration hereof said policy is extended until default is made in payment of this note, when all rights and benefits secured thereby shall cease and determine without notice, and said policy shall be ipso facto null and void, except as otherwise provided therein. I hereby agree that this note shall not be deemed a payment for life insurance, but only for an extension of the time for the payment of the same and the nonpayment of this note when due, and the termination of said insurance by reason thereof, shall not impair the validity of this note, but the same shall become due and payable for the proportion of its face and interest that the time the insurance has been extended for bears to the whole time covered by said premium." In view of this clause, did the company have the right to continue the policy in force, without consulting the insured, and thus charge him, whether he so desired or not, with the full amount of the note, notwithstanding the express condition that upon default in payment the insured should only be bound for the proportion thereof as expressed in the note, which amounted to one-fourth thereof? Insured had indicated his intention and desire to drop the policy, which he had a right to do, only paying for the extension. Could the company deprive him of this option, and impose upon him, without his consent, the burden of a continuance of it? This disposes of appellee's first and second cross-assignments of error, which with the several propositions thereunder are overruled.

The third and fourth cross-assignments complaining of certain conclusions of fact of the trial court embraced in paragraphs 8 and 9 thereof, with the propositions thereunder, are, we think, without substantial merit, and are overruled without discussion.

We find no error authorizing a reversal of that part of the judgment refusing a recovery upon policy 6098, and, as to that, the judgment is affirmed. Our conclusion is that, in so far as the judgment allows a recovery by appellee on policy 1319, it should be reversed and judgment here rendered for

appellant, and that, in so far as the judgment is in favor of appellant on policy 6098, it should be affirmed, and it has been so ordered.

Affirmed in part. Reversed and rendered in part.